JS 44 (Rev 12/12)

# CIVIL COVER SHEET

15 1435

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

**I. (a) PLAINTIFFS**
HARVEY KALAN, M.D.; THE HARVEY KALAN, M.D., INC. EMPLOYEE WELFARE BENEFIT PLAN; et al.

**DEFENDANTS**
FARMERS & MERCHANTS TRUST COMPANY OF CHAMBERSBURG AS SUCCESSOR BY MERGER TO COMMUNITY TRUST COMPANY; et al.

**(b)** County of Residence of First Listed Plaintiff   Los Angeles
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant   Franklin County
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Ira B. Silverstein, Esq. c/o Morgado, P.A.
223 Park Avenue S. #84164
New York, NY 10003

Attorneys *(If Known)*

**II. BASIS OF JURISDICTION** *(Place an "X" in One Box Only)*

- ☐ 1   U.S. Government Plaintiff
- ☒ 3   Federal Question
    *(U.S. Government Not a Party)*
- ☐ 2   U.S. Government Defendant
- ☐ 4   Diversity
    *(Indicate Citizenship of Parties in Item III)*

**III. CITIZENSHIP OF PRINCIPAL PARTIES** *(Place an "X" in One Box for Plaintiff*
*(For Diversity Cases Only)*                           *and One Box for Defendant)*

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. NATURE OF SUIT** *(Place an "X" in One Box Only)*

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** / **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane / ☐ 365 Personal Injury - | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 400 State Reapportionment |
| ☐ 130 Miller Act | ☐ 315 Airplane Product   Product Liability | | | ☐ 410 Antitrust |
| ☐ 140 Negotiable Instrument | Liability / ☐ 367 Health Care/ | | | ☐ 430 Banks and Banking |
| ☐ 150 Recovery of Overpayment | ☐ 320 Assault, Libel &   Pharmaceutical | | **PROPERTY RIGHTS** | ☐ 450 Commerce |
| & Enforcement of Judgment | Slander   Personal Injury | | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers'   Product Liability | | ☐ 830 Patent | ☐ 470 Racketeer Influenced and |
| ☐ 152 Recovery of Defaulted | Liability / ☐ 368 Asbestos Personal | | ☐ 840 Trademark | Corrupt Organizations |
| Student Loans | ☐ 340 Marine   Injury Product | | | ☐ 480 Consumer Credit |
| (Excludes Veterans) | ☐ 345 Marine Product   Liability | | **LABOR** / **SOCIAL SECURITY** | ☐ 490 Cable/Sat TV |
| ☐ 153 Recovery of Overpayment | Liability / **PERSONAL PROPERTY** | ☐ 710 Fair Labor Standards | ☐ 861 HIA (1395ff) | ☐ 850 Securities/Commodities/ |
| of Veteran's Benefits | ☐ 350 Motor Vehicle / ☐ 370 Other Fraud | Act | ☐ 862 Black Lung (923) | Exchange |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle / ☐ 371 Truth in Lending | ☐ 720 Labor/Management | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| ☐ 190 Other Contract | Product Liability / ☐ 380 Other Personal | Relations | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal   Property Damage | ☐ 740 Railway Labor Act | ☐ 865 RSI (405(g)) | ☐ 893 Environmental Matters |
| ☐ 196 Franchise | Injury / ☐ 385 Property Damage | ☐ 751 Family and Medical | | ☐ 895 Freedom of Information |
| | ☐ 362 Personal Injury -   Product Liability | Leave Act | | Act |
| | Medical Malpractice | ☐ 790 Other Labor Litigation | | ☐ 896 Arbitration |
| **REAL PROPERTY** | **CIVIL RIGHTS** / **PRISONER PETITIONS** | ☒ 791 Employee Retirement | **FEDERAL TAX SUITS** | ☐ 899 Administrative Procedure |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights / **Habeas Corpus:** | Income Security Act | ☐ 870 Taxes (U.S. Plaintiff | Act/Review or Appeal of |
| ☐ 220 Foreclosure | ☐ 441 Voting / ☐ 463 Alien Detainee | | or Defendant) | Agency Decision |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment / ☐ 510 Motions to Vacate | | ☐ 871 IRS—Third Party | ☐ 950 Constitutionality of |
| ☐ 240 Torts to Land | ☐ 443 Housing/   Sentence | | 26 USC 7609 | State Statutes |
| ☐ 245 Tort Product Liability | Accommodations / ☐ 530 General | | | |
| ☐ 290 All Other Real Property | ☐ 445 Amer. w/Disabilities - / ☐ 535 Death Penalty | **IMMIGRATION** | | |
| | Employment / **Other:** | ☐ 462 Naturalization Application | | |
| | ☐ 446 Amer. w/Disabilities - / ☐ 540 Mandamus & Other | ☐ 465 Other Immigration | | |
| | Other / ☐ 550 Civil Rights | Actions | | |
| | ☐ 448 Education / ☐ 555 Prison Condition | | | |
| | ☐ 560 Civil Detainee - | | | |
| | Conditions of | | | |
| | Confinement | | | |

**V. ORIGIN** *(Place an "X" in One Box Only)*

- ☒ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from Another District *(specify)*
- ☐ 6 Multidistrict Litigation

**VI. CAUSE OF ACTION**
Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
29 U.S.C. §1132
Brief description of cause:
Claim for breach of fiduciary duties, participation in fiduciary duties, disgorgement

**VII. REQUESTED IN COMPLAINT:**
☒ CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.
DEMAND $
CHECK YES only if demanded in complaint:
JURY DEMAND:  ☒ Yes  ☐ No

**VIII. RELATED CASE(S) IF ANY**
*(See instructions)*:
JUDGE   McLaughlin
DOCKET NUMBER   2:09-cv-00988

DATE   March 14, 2015

SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT #          AMOUNT          APPLYING IFP          JUDGE          MAG. JUDGE

MAR 20 2015

15-CV-1435

## UNITED STATES DISTRICT COURT

**FOR THE EASTERN DISTRICT OF PENNSYLVANIA — DESIGNATION FORM** to be used by counsel to indicate the category of the case for the purpose of assignment to appropriate calendar.

Address of Plaintiff: **All Plaintiffs - c/o Ira Silverstein, c/o Morgado, P.A. 223 Park Ave S. #84614, New York, NY 10003**

Address of Defendant: _____

Place of Accident, Incident or Transaction: _____
*(Use Reverse Side For Additional Space)*

Does this civil action involve a nongovernmental corporate party with any parent corporation and any publicly held corporation owning 10% or more of its stock?
(Attach two copies of the Disclosure Statement Form in accordance with Fed.R.Civ.P. 7.1(a))　　　　Yes☐　No☐　**UNKNOWN**

Does this case involve multidistrict litigation possibilities?　　　　　　　　　　　　Yes☐　No☑

*RELATED CASE, IF ANY:*
Case Number: **2:09-CV-00988**　Judge **McLaughlin**　　　Date Terminated: _____

Civil cases are deemed related when yes is answered to any of the following questions:

1. Is this case related to property included in an earlier numbered suit pending or within one year previously terminated action in this court?
　　　　　　　　　　　　　　　　　　　　　　　　　　Yes☐　No☑

2. Does this case involve the same issue of fact or grow out of the same transaction as a prior suit pending or within one year previously terminated action in this court?
　　　　　　　　　　　　　　　　　　　　　　　　　　Yes☑　No☐

3. Does this case involve the validity or infringement of a patent already in suit or any earlier numbered case pending or within one year previously terminated action in this court?
　　　　　　　　　　　　　　　　　　　　　　　　　　Yes☐　No☑

4. Is this case a second or successive habeas corpus, social security appeal, or pro se civil rights case filed by the same individual?
　　　　　　　　　　　　　　　　　　　　　　　　　　Yes☐　No☑

CIVIL: (Place ✔ in ONE CATEGORY ONLY)

A. *Federal Question Cases:*

1. ☐ Indemnity Contract, Marine Contract, and All Other Contracts
2. ☐ FELA
3. ☐ Jones Act-Personal Injury
4. ☐ Antitrust
5. ☐ Patent
6. ☐ Labor-Management Relations
7. ☐ Civil Rights
8. ☐ Habeas Corpus
9. ☐ Securities Act(s) Cases
10. ☐ Social Security Review Cases
11. ☑ All other Federal Question Cases
　　　(Please specify) **ERISA**

B. *Diversity Jurisdiction Cases:*

1. ☐ Insurance Contract and Other Contracts
2. ☐ Airplane Personal Injury
3. ☐ Assault, Defamation
4. ☐ Marine Personal Injury
5. ☐ Motor Vehicle Personal Injury
6. ☐ Other Personal Injury (Please specify)
7. ☐ Products Liability
8. ☐ Products Liability — Asbestos
9. ☐ All other Diversity Cases
　　　(Please specify) _____

## ARBITRATION CERTIFICATION
*(Check Appropriate Category)*

I, **Ira B. Silverstein**, counsel of record do hereby certify:

MAR 20 2015

☐ Pursuant to Local Civil Rule 53.2, Section 3(c)(2), that to the best of my knowledge and belief, the damages recoverable in this civil action case exceed the sum of $150,000.00 exclusive of interest and costs;

☐ Relief other than monetary damages is sought.

DATE: **March 19, 2015**　　　　_[signature]_　　　　**17658**
　　　　　　　　　　　　　　Attorney-at-Law　　　　Attorney I.D.#

**NOTE:** A trial de novo will be a trial by jury only if there has been compliance with F.R.C.P. 38.

I certify that, to my knowledge, the within case is not related to any case now pending or within one year previously terminated action in this court except as noted above.

DATE: _____　　　　_____　　　　_____
　　　　　　　　　　　　　　Attorney-at-Law　　　　　　Attorney I.D.#

CIV. 609 (5/2012)

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

### CASE MANAGEMENT TRACK DESIGNATION FORM

HARVEY KALAN, M.D.; THE HARVEY
KALAN, M.D., INC. et al.  :
    v.  :
FARMERS & MERCHANTS TRUST COMPANY OF  :
CHAMBERSBURG AS SUCCESSOR BY MERGER TO  :
COMMUNITY TRUST COMPANY; et al.  :

CIVIL ACTION

**15    1435**

NO.

In accordance with the Civil Justice Expense and Delay Reduction Plan of this court, counsel for plaintiff shall complete a Case Management Track Designation Form in all civil cases at the time of filing the complaint and serve a copy on all defendants. (See § 1:03 of the plan set forth on the reverse side of this form.) In the event that a defendant does not agree with the plaintiff regarding said designation, that defendant shall, with its first appearance, submit to the clerk of court and serve on the plaintiff and all other parties, a Case Management Track Designation Form specifying the track to which that defendant believes the case should be assigned.

### SELECT ONE OF THE FOLLOWING CASE MANAGEMENT TRACKS:

(a) Habeas Corpus – Cases brought under 28 U.S.C. § 2241 through § 2255.    ( )

(b) Social Security – Cases requesting review of a decision of the Secretary of Health and Human Services denying plaintiff Social Security Benefits.    ( )

(c) Arbitration – Cases required to be designated for arbitration under Local Civil Rule 53.2.    ( )

(d) Asbestos – Cases involving claims for personal injury or property damage from exposure to asbestos.    ( )

(e) Special Management – Cases that do not fall into tracks (a) through (d) that are commonly referred to as complex and that need special or intense management by the court. (See reverse side of this form for a detailed explanation of special management cases.)    (✔)

(f) Standard Management – Cases that do not fall into any one of the other tracks.    ( )

| March 19, 2015 | Ira B. Silverstein | _Ira Silverstein_ |
|---|---|---|
| **Date** | **Attorney-at-law** | **Attorney for Plaintiffs** |
| (917) 909-9969 | | irasilverstein@mac.com |
| **Telephone** | **FAX Number** | **E-Mail Address** |

(Civ. 660) 10/02

MAR 2...





$400.°°

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| HARVEY KALAN, M.D.; THE HARVEY KALAN, M.D., INC. EMPLOYEE WELFARE BENEFIT PLAN; PAMELA K. ERDMAN, M.D.; THE DR. PAMELA K. ERDMAN, M.D., INC. EMPLOYEE WELFARE BENEFIT PLAN; GRETCHEN CASTELLANO; DRS. MARTIN & ELISSA ZENNI; and THE M&E ZENNI INC., WELFARE BENEFIT PLAN, individually and on behalf of all others similarly situated, | C.A. No.: <br><br> 15    1435 |
| Plaintiffs, | **CLASS ACTION** |
| vs. | **JURY TRIAL DEMANDED AS TO ALL NON-ERISA CLAIMS** |
| FARMERS & MERCHANTS TRUST COMPANY OF CHAMBERSBURG AS SUCCESSOR BY MERGER TO COMMUNITY TRUST COMPANY; LAWRENCE KORESKO; KORESKO FINANCIAL, LLP; FREEDOM BROKERS, LLC; PENNMONT BENEFITS, INC.; DEON DANIEL; LINCOLN NATIONAL CORPORATION; SAMUELS, YOELIN KANTOR, LLP; JEFFREY NIEMAN; LOCKE LORD BISSELL & LIDDELL, LLP; ANDERSON KILL & OLICK, P.C.; CAPLIN & DRYSDALE, CHARTERED; GATES HALBRUNER & HATCH and its successor, HALBRUNER HATCH & GUISE, LLP; CHRISTIE PARABUE MORETEN & YOUNG and its successor, CHRISTIE SULLIVAN & YOUNG PC; JEFFERSON GOVERNMENT RELATIONS; THEODORE HOBSON; BONNIE KORESKO; AND JOHN DOE COMPANIES 1-50. |  FILED <br> MAR 20 2015 <br> MICHAEL E. KUNZ, Clerk <br> By_____ Dep. Clerk |
| Defendants. | |



1

## COMPLAINT

Plaintiffs Harvey Kalan, M.D., the Harvey Kalan, M.D., Inc. Employee Welfare Benefit Plan, Pamela K. Erdman, M.D., the Dr. Pamela K. Erdman, M.D., Inc. Employee Welfare Benefit Plan, Gretchen Castellano, Drs. Martin & Elisa Zenni, and the M&E Zenni, Inc. Welfare Benefit Plan, hereby bring this complaint on their own behalf and on behalf of a class of similarly situated employee benefit plans and their participants and beneficiaries against defendants Farmers & Merchants Trust Company of Chambersburg as successor by merger to Community Trust Company; Lawrence Koresko; Koresko Financial LLP; Freedom Brokers, LLC; PennMont Benefits, Inc.; Deon Daniel; Lincoln National Corporation; Samuels, Yoelin Kantor, LLP; Jeffrey Nieman; Locke Lord Bissell & Liddell, LLP; Anderson Kill & Olick, P.C.; Caplin & Drysdale, Chartered; Gates Halbruner & Hatch and its successor, Halbruner Hatch & Guise, LLP; Christie Parabue Moreten & Young and its successor, Christie Sullivan & Young PC; Jefferson Government Relations; Theodore Hobson; Bonnie Koresko; and John Doe Companies 1-50.

### Preliminary Statement

1.      Between 2004 and the end of 2013, John Koresko and affiliated individuals and entities ("Koresko *et al.*), in the course of operating a multiple employer welfare arrangement known commercially as the REAL VEBA ("the Arrangement" or "the Koresko Arrangement"), systematically converted and misused the assets of two trusts, the REAL VEBA Trust and the Single Employer Welfare Benefit Plan Trust ("the SEWBPT") (collectively "the Trusts"). The Trusts were created to hold assets for the

2

exclusive benefit of the participants and beneficiaries of the Arrangement, i.e. employees of participating employers and their designated beneficiaries.

2. Much of the defalcation consisted of using the Trusts' assets to pay for services rendered for Mr. Koresko's personal benefit, for the benefit of companies he owned and controlled, and for the benefit of certain participating employers who had claimed tax deductions related to the Arrangement. These expenditures are set forth in detail in the Memorandum Opinion issued in *Perez v. Koresko et al.*, 2:09-cv- 00988- MAM, E.D. PA. Docket No. 1134, which is incorporated herein by reference ("the Memorandum Opinion"). In addition, Koresko *et al.* converted over $35 million of the Trusts assets through unauthorized and improper loans that stripped the Trusts of cash value accumulated in life insurance policies. The policies were owned by the Trusts for the benefit of the individual employee benefit plans established by each participating employer. As the Memorandum Opinion explains, all of these expenditures and loans were in breach of numerous provisions of the Employee Retirement Income Security Act of 1974 as amended ("ERISA") and breached fiduciary duties owed by Mr. Koresko and others pursuant to ERISA and common law.

3. The defendants in the instant case were either co-fiduciaries who failed to take appropriate steps to prevent the conversions, co-fiduciaries or parties-in-interest who improperly benefited from transactions, recipients of the improperly spent funds or parties who otherwise knowingly participated in the fiduciary breaches. This lawsuit, brought under ERISA and under state law, seeks (i) disgorgement of all moneys paid by the Trusts to the defendants who received the improper expenditures, (ii) disgorgement of all profits made as a result of improper or prohibited transactions, (iii) make-whole

3

remedies against the co-fiduciaries, (iv) disgorgement of insurance commissions paid in violation of ERISA and common law, and (v) such other relief as the Court deems appropriate.

## PARTIES

4.    Plaintiffs are:

a.    Harvey Kalan, M.D., ("Dr. Kalan"), a citizen of California and a participant in and fiduciary of the Harvey Kalan, M.D., Inc. Employee Welfare Benefit Plan;

b.    The Harvey Kalan, M.D., Inc. Employee Welfare Benefit Plan ("the Kalan WBP"), an employee benefit plan within the meaning of ERISA.  The Kalan WBP was established to provide employee benefits through the Koresko Arrangement;

c.    Pamela K. Erdman, M.D. ("Dr. Erdman"), a citizen of Georgia and a participant in and fiduciary of the Dr. Pamela K. Erdman, M.D., Inc. Employee Welfare Benefit Plan;

d.    The Dr. Pamela K. Erdman, M.D., Inc. Employee Welfare Benefit Plan ("the Erdman WBP"), an employee benefit plan within the meaning of ERISA.  The Erdman WBP was established to provide employee benefits through the Koresko Arrangement;

e.    Gretchen Castellano, ("Mrs. Castellano"), a citizen of Florida and a beneficiary of the Dominic M. Castellano, D.D.S., P.A. Employee Welfare Benefit Plan ("the Dr. Castellano WBP"), an employee benefit plan within the meaning of ERISA. The Dr. Castellano WBP was established to provide employee benefits through the Koresko Arrangement;

4

        f.      Drs. Martin & Elisa Zenni ("the Zennis"), citizens of Florida and fiduciaries, participants and beneficiaries of the M&E Zenni Welfare Benefit Plan. Drs. Martin & Elisa Zenni are both owner/employees of M&E Zenni Inc., the sponsoring employer of the Zenni WBP; and

        g.      The M&E Zenni Welfare Benefit Plan ("the Zenni WBP"), an employee benefit plan in which only owner-employees or their spouses participate. The Zenni WBP was established to provide benefits through the Koresko Arrangement.

     5.     Defendants are:

        a.      Farmers & Merchants Trust Company of Chambersburg as successor by merger to Community Trust Company ("CTC"), a trustee of the Trusts and a fiduciary under common law and pursuant to ERISA;

        b.      Lawrence Koresko, a principal of many of the entities that functioned as fiduciaries within the Arrangement and a recipient of commissions paid on the insurance policies purchased as part of the Arrangement;

        c.      Koresko Financial LP ("Koresko Financial"), a Pennsylvania limited partnership with its principal place of business in Bridgeport, Pennsylvania. Upon information and belief, Koresko Financial was a vehicle through which John and Lawrence Koresko were paid commissions by the insurance companies that participated in the Arrangement. Upon information and belief, it was also utilized to hide converted assets.

        d.      Freedom Brokers, LLC ("Freedom Brokers"), a Pennsylvania limited liability company with its principal place of business in Bridgeport, Pennsylvania. Upon information and belief, Freedom Brokers was another vehicle through which John

and Lawrence Koresko were paid commissions by the insurance companies that participated in the Arrangement.  It was also utilized to hide converted assets.

   e.  PennMont Benefits, Inc., a Delaware corporation with its principal place of business at the same address as Koresko Financial.  PennMont Benefits, Inc. is the general partner of Koresko Financial and its officers are John and Lawrence Koresko.

   f.  Deon Daniel ("Daniel"), a real estate developer in Nevis, West Indies;

   g.  Lincoln National Corporation ("Lincoln National"), a financial services company;

   h.  Samuels, Yoelin Kantor, LLP ("SYK"), a law firm with offices at 111 SW 5th Avenue, Suite 3800, Portland, OR 97204;

   i.  Jeffrey A. Nieman ("Nieman"), an attorney with offices at 1 Financial Plaza, Suite 2612, Fort Lauderdale, FL 33394;

   j.  Locke Lord Edwards, a law firm and successor by merger to Locke Lord Bissell & Liddell, LLP ("Locke Lord") with offices at 2800 JPMorgan Chase Tower, 600 Travis, Houston, TX 7700;

   k.  Anderson Kill & Olick, P.C. ("AKO"), a law firm with offices at 1600 Market Street, Suite 2500, Philadelphia, PA 19103;

   l.  Caplin & Drysdale ("C&D"), Chartered, a law firm with offices at One Thomas Circle NW, Suite 1100, Washington, D.C.;

   m.  Gates Halbruner & Hatch ("GHH") and its successor, Halbruner Hatch & Guise, LLP, a law firm with offices at 2109 Market Street, Camp Hill, PA 17011;

6

n.      Christie Parabue Moreten & Young ("CPMY") and its successor, Christie Sullivan & Young PC, a law firm with offices at 1880 JFK Boulevard, 10th Floor, Philadelphia, PA 19103;

o.      Jefferson Government Relations, LLC ("JGR"), a District of Columbia limited liability company with offices at 1615 L St Nw # 650, Washington, DC 20036;

p.      Theodore Hobson, an attorney in Nieves, West Indies;

q.      Bonnie Koresko, former wife of John Koresko;

and

r.      Defendants DOES 1 through 50, inclusive, whose names and capacities are presently unknown to plaintiffs, and who are being sued under fictitious names until their identities are learned, at which time leave to amend will be requested. Upon information and belief, the defendant DOES include other individuals and/or business entities owned or controlled by Koresko *et al.* who possess or received funds generated through the Koresko Arrangement.

6.      Plaintiffs allege:

a.      Defendants CTC, Lawrence Koresko, and Lincoln National were, at relevant times, fiduciaries of the employee benefit plans. They will be referred to collectively as the "Fiduciary Defendants" or the "Co-Fiduciary Defendants;"

b.      Defendants Lawrence Koresko, Koresko Financial LLP, Freedom Brokers, LLC, PennMont Benefits, Inc. and Does 1-50 were recipients of commissions paid by various insurance companies that sold policies to the Trusts. They will be referred to collectively as the "Commission Recipient Defendants;"

7

c.      Defendants SYK, Nieman, Locke Lord, AKO, C&D, GHH, Theodore Hobson, and CPMY are law firms or attorneys-at-law. They will be referred to collectively as the "Attorney Defendants."

d.      All defendants were recipients of plan assets and they will be referred to collectively as the "Recipient Defendants" in the appropriate context;

## JURISDICTION AND VENUE

7.      As most, if not all, of the benefit plans whose assets were held by the Trusts were employee benefit plans within the meaning of ERISA, and as Koresko *et al.*'s conversion of the Trusts' assets and payments to the Recipient Defendants violated numerous provisions of ERISA and of the plaintiff benefit plans, this action seeks appropriate relief for violations of §§ 404 and 406 of ERISA  (29 U.S.C. §§ 1104 and 1106) pursuant to § 502(a)(2) and (a)(3) of ERISA (29 U.S.C. § 1132(a)(2) and (a)(3)). With respect to the Fiduciary Defendants, plaintiffs also allege violations of § 405 of ERISA. This Court has original jurisdiction pursuant to §502(e)(1) of ERISA (29 U.S.C. § 1132(e)(1)).

8.      This Court has supplemental jurisdiction over the state law claims asserted pursuant to 28 U.S.C. § 1367(a).

9.      Venue is appropriate in the Eastern District of Pennsylvania, as the employee benefit plan plaintiffs were administered in the district, many of the defendants conduct business in the district, and a substantial part of the acts and omissions giving rise to the claims took place in the district.

## Class Allegations

10.    Plaintiffs seek to pursue this action on their own behalf and on behalf of a class of all participants in and beneficiaries of benefit plans whose assets are held by the REAL VEBA Trust or the SEWBPT, and on behalf of all benefit plans whose assets are held by the REAL VEBA Trust or the SEWBPT.  In addition, Plaintiffs seek to represent two sub-classes: (1) a sub-class of all benefit plans governed by ERISA, as well as said plans' participants and beneficiaries; and (2) a sub-class of all benefit plans not governed by ERISA, as well as said plans' participants and beneficiaries. The class members of both sub-classes are readily ascertainable from the files and records of Koresko *et al.*

11.    The assets of over 200 employee benefit plans are held by the Trusts. These plans, in aggregate, have over 500 participants and beneficiaries, making joinder of all class members impracticable.

12.    There are questions of law and of fact common to the class.

13.    The common questions of fact include, but are not limited to:

a.    Whether the Recipient Defendants had actual or constructive knowledge that the funds they were receiving were conveyed in breach of Koresko *et al.*'s fiduciary duties;

b.    Whether a conflict of interest existed between Koresko *et al.*'s interests and those of the Trusts;

c.    The steps, if any, taken by the Attorney Defendants who represented the Trusts to insure that the interests of the Trusts and the Trusts' beneficiaries were not compromised;

9

     d.     The amount of commissions paid to the Commission Recipient Defendants;

     e.     Whether the Co-Fiduciary Defendants breached their obligations under 29 U.S.C. §§ 1105 and 1109.

14.     The common questions of law include, but are not limited to:

     a.     Whether Koresko *et al.*'s use of the Trusts' assets to pay the Recipient Defendants violated provisions of ERISA, provisions of relevant state law or provisions of the benefit plans whose assets were being held by the Trusts;

     b.     Whether disgorgement of fees paid to the Recipient Defendants or such other relief as the Court may consider is "other appropriate equitable relief" within the meaning of § 502(a)(3) of ERISA and appropriate relief under common law principles;

     c.     The scope of the Co-Fiduciaries obligations to the various employee benefit plans under ERISA and state law;

     d.     The appropriate relief, should it be determined that the Co-Fiduciary Defendants were in breach of their obligations to the employee benefit plans;

     e.     Whether the Commission Recipient Defendants violated § 406 of ERISA and state law by accepting the commissions; With respect to the Commission Recipient Defendants who are determined not to have been fiduciaries or parties-in-interest, whether disgorgement of the commissions paid or such other relief as the Court may consider is "other appropriate equitable

10

relief" within the meaning of § 502(a)(3) of ERISA and appropriate relief under common law principles; and

        f.      Whether the conflicts of interest between the Koresko related clients represented by the Attorney Defendants were waived and are waivable.

      15.      The claims of the representative parties are typical of the claims of the class.

      16.      The representative parties will fairly and adequately represent the interests of the class.

      17.      The questions of law or fact common to class members predominate over any questions affecting only individual members, and a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.

## OPERATIVE ALLEGATIONS

### Origins of the Koresko Arrangement

      18.      Koresko *et al.* are a group of interrelated entities together with their principals and certain employees. The entities were all created and established by John and Lawrence Koresko as an entrepreneurial vehicle designed to take advantage of section 419(A)(f)(6) of the Internal Revenue Code ("IRS" or "Code).

      19.      Prior to the 1984 passage of §§ 419 and 419A of the IRC, expenditures for employee benefits were deductible under IRC § 162. *See Greensboro Pathology Associates, P.A. v. U.S.*, 698 F.2d 1196 (Fed. Cir. 1982). Sections 419 and 419A placed substantial limitations on the deductibility of these expenses; however, Congress saw fit

11

to carve out an exception for "10 or more employer plans." For "10 or more employer plans," the newly adopted limitations did not apply. IRC § 419A(f)(6).

20.     Though the language of § 419A(f)(6) is deceptively simple, the scope and applicability of the § 419A(f)(6) exception to the general § 419 limitations on the deductibility of expenditures for employee benefits has long been a subject of dispute. The Code itself states only that to come under the § 419A(f)(6) exception more than one employer must contribute to the plan, no employer may normally contribute more than 10% of the total, and the plan may not maintain "experience-rating arrangements with respect to individual employers." IRC § 419A(f)(6).

21.     In 1995, the Service issued Notice 95-34 to "alert taxpayers and their representatives to some of the significant tax problems that may be raised by [trust] arrangements [which claim to satisfy § 419A(f)(6)]." The notice advised that such arrangements might not satisfy § 419A(f)(6) if they are actually providing deferred compensation, if they are in fact separate plans maintained for each employer, or if they are experience-rated.

22.     The issues raised by Notice 95-34 were parsed in *Booth v. C.I.R.*, 108 T.C. 524 (U.S. Tax Ct. 1997). The Tax Court, while disagreeing with the Commissioner's view that the plan in *Booth* was actually one of deferred compensation, found the plan did not satisfy § 419A(f)(6) because it maintained separate accounts for each employer and the employees could only look to their employer's account to pay benefits. Hence, the Court reasoned, the plan was actually an amalgamation of separate plans. Moreover, the Court found that the arrangements had the effect of adjusting benefits based on prior

12

experience and, therefore, the plan was an experience rating arrangement. As a consequence, the *Booth* plan did not satisfy § 419A(f)(6).

23.     After the *Booth* decision, Koresko and other entrepreneurs sought to take advantage of § 419(A)(f)(6) by marketing "plans" that claimed to come under the § 419(A)(f)(6) exception to the limitations on the deductibility of welfare benefit expenditures (hereinafter "419A(f)(6) plans").

**The Arrangement Itself**

24.     The Koresko Arrangement claimed to offer a § 419(A)(f)(6) vehicle through which owner/employees could purchase cash value life insurance and deduct the premiums as business expenses.

25.     Though the documents Koresko drafted to implement the Arrangement were complex to the point of unintelligibility and contained numerous internal contradictions that made key provisions meaningless, the basic structure relevant to this complaint was relatively straightforward and is best described in the words of one of Koresko's marketing pamphlets.

26.     In providing an example of how the Arrangement worked, the pamphlet posited a "Mr. X," who owned a business and a "Joe Honest," Mr. X's insurance agent/financial advisor. Joe introduced Mr. X to PennMont Benefit Services, the company Koresko utilized to nominally run the Arrangement, and, after Mr. X decided to enter into the Arrangement:

> [Mr. X] asked Joe to obtain a cash value policy for himself and term insurance for the other participants. Mr. X informed Joe that he desired to shelter $100,000 in the

13

> VEBA before year end. Mr. X asked Joe to determine if that was permissible.
>
> Joe submitted a Proposal Request form to **Penn-Mont Benefit Services. Penn-Mont** produced a proposal which illustrated potential tax savings, a death benefit for employee (A) for $450,000; (B) for $250,000; and (C) for $300,000, and a $1.5 million death benefit for Mr. X, the owner/employee; and a cash value build-up which would be used to pay severance benefits or distributed to the participants upon plan termination.
>
> Pleased with the result, Mr. X forwarded a check in the amount of $100,000 payable to Commerce Bank, N.A., the trustee, before December 31. After clearance of the check, the corporation, trustee, and employees completed the life insurance applications on behalf of Mr. X and employees A. B and C. After approval, the trustee paid the premiums.

27.     A prospective participating employer was required to sign an Adoption Agreement which:

       a.     Established the employer's own welfare benefit plan;

       b.     Adopted a Koresko prepared prototype as the terms of the benefit plan; and

       c.     Agreed to the terms of a pre-existing trust (either the REAL VEBA Trust or the SEWBPT) created by Koresko.

28.     The Trusts then functioned as a pass-through vehicle, receiving the insurance premiums paid by the employer and then paying them to the insurance companies.

29.     The Trusts were also named as the owners and beneficiaries of the policies f/b/o the employer's welfare benefit plan. When benefits were to be paid, typically upon the death of a participant, the insurance company would pay the death benefit to the

14

Trusts who were, in turn, supposed to pay the benefit to the participant's designated beneficiary.

30.     Alternatively, an employer could terminate the plan and the accumulated cash value of the insurance policies would be distributed to the plan participants pursuant to a formula that resulted in the owner/employees receiving all or virtually all of the cash value.

## The Fiduciary Breaches

31.     As alleged and established in *Perez v. Koresko et al.*, since 2008 at the very latest, Koresko *et al.* converted the Trusts' assets to their personal benefit rather than hold the assets for the exclusive benefit of the employer benefit plans and the plans' participants and beneficiaries.

32.     The conversions and numerous other fiduciary breaches are detailed in the Memorandum Opinion and are incorporated herein by reference.  In summary, Koresko *et al.* converted many millions of dollars from the Trusts through various forms of self-dealing and through loans that stripped the insurance policies of substantial portions of their cash value.  The money was used for Koresko's own personal benefit including, for example, the purchase of condominiums in Nevis.

33.     Though not discussed in the Memorandum Opinion, in addition to the various breaches described therein, Koresko, both directly and through the Commission Recipient Defendants, received millions of dollars in commissions from the insurance companies that sold policies to the various employee benefit plans.  The payment and receipt of these commissions was in violation of § 406 of ERISA, 29 U.S.C. § 1106.

15

**The Involvement of the Various Defendants**

**CTC**

34.     CTC was, at relevant times, trustee of the Trusts and a fiduciary of the plaintiff employee benefit plans, both under ERISA and state law.  As trustee, it controlled all of the assets of the Trusts during the period of time of the various conversions.

35.     CTC at all relevant times had actual or constructive knowledge that Koresko *et al.* were engaged in self-dealing and using Trust assets for improper purposes and violating ERISA § 406. Yet, instead of taking reasonable steps to prevent or remedy the breaches, CTC facilitated them by transferring Trust assets to Koresko controlled entities.

36.     CTC also failed to perform its fiduciary duties in accord with the prudent man standard of care.  Instead, CTC recklessly consented to all requests for funds made by Koresko *et al.* and allowed Koresko *et al.* to misrepresent themselves as CTC in dealings with third-parties, thus enabling additional conversions.

**Lawrence Koresko**

37.     As a principal of various entities utilized to effect the Arrangement, including PennMont Benefit Services, Inc. ("PennMont"), Penn Public Trust ("PPT"), Koresko Financial, LLP and Freedom Brokers, LLP, Lawrence Koresko received

substantial income improperly paid to these entities from the Trusts' assets and in the form of commissions from the insurance companies.

38.     At all relevant times, he was a fiduciary and a party-in-interest and, rather than take steps to prevent the numerous breaches of fiduciary duties, Lawrence Koresko knowingly participated in, facilitated and benefitted from the breaches.  He was aware of the improper compensation, the loans stripping out cash value, the commissions and all other violations outlined in the Memorandum Opinion.

39.     Lawrence Koresko also had direct dealings with many of the class members and affirmatively concealed the violations from them, including the fact that cash value had been stripped out of the class members' policies.

**Koresko Financial**

40.     Koresko Financial was a vehicle utilized by John and Lawrence Koresko to receive commissions in violation of ERISA § 406.  As the Koreskos were the principals of Koresko Financial, it was aware of all the violations of ERISA committed by its principals and was aware that the commissions paid to it were in violation of ERISA § 406.  Thus, it knowingly participated in these fiduciary breaches.

41.     Upon information and belief, Koresko Financial may also have received other funds that were plan assets.

**Freedom Brokers**

42.     Freedom Brokers was a vehicle utilized by John and Lawrence Koresko to receive commissions in violation of ERISA § 406.  As the Koreskos were the principals

17

of Freedom Brokers, it was aware of all the violations of ERISA committed by its principals and was aware that the commissions paid to it were in violation of ERISA § 406. Thus, it knowingly participated in these fiduciary breaches.

43.     Upon information and belief, Freedom Brokers may also have received other funds that were plan assets.

## PennMont Benefits

44.     PennMont Benefits was yet another vehicle utilized by John and Lawrence Koresko to receive commissions in violation of ERISA § 406. As the Koreskos were the principals of PennMont Benefits, it was aware of all the violations of ERISA committed by its principals and was aware that the commissions paid to it were in violation of ERISA § 406. Thus, it knowingly participated in these fiduciary breaches.

45.     Upon information and belief, PennMont Benefits may also have received other funds that were plan assets.

## Deon Daniel

46.     Deon Daniel is a real estate developer in the Caribbean island of Nevis. Mr. Koresko agreed to purchase seven (7) condominium units from Mr. Daniel in 2007-2008. The total purchase price of the units was $4,205,000. The purchase agreements were signed by Mr. Koresko in his personal capacity. After entering into the agreements, Mr. Koresko transferred money for the benefit of Mr. Daniel, both directly to Mr. Daniel, and through Nevisian Attorney Defendant Hobson. Mr. Koresko, starting by at least May 12, 2008, wired money to Mr. Hobson and for the benefit of Mr. Daniel as payment for

18

the units. By 2008, Mr. Koresko had made payments in the amount of at least

$2,442,000. These monies were transferred from a Koresko *et al.* bank account (i.e., the

"1075" account at TD Bank, N.A.) in the name of Koresko Law Firm PC Death Benefit

Escrow Account. This account held money which Mr. Koresko misappropriated from the

Trusts.

47.     As the 1075 account was titled a "Death Benefit Escrow Account, " Mr.

Daniel and Mr. Hobson had actual or constructive notice that the payments they received

were in breach of Mr. Koresko's fiduciary duties.

**Lincoln National**

48.     On July 8, 2010, $1.9 million dollars in assets of the Trusts was paid to

Lincoln National to purchase an annuity titled to the W.S. Newell Welfare Benefit Plan,

care of PennMont, and naming Daniel K. Newell as the annuitant.

49.     At that time, the W.S. Newell Welfare Benefit Plan was not an employee

benefit plan that was part of the Arrangement and its assets were not held by the Trusts. It

and its participants and beneficiaries are not members of the class and sub-classes on

whose behalf these actions are brought.

50.     As the payment to Lincoln National came from a trust account and as

Lincoln National was a fiduciary of over thirty of the employee benefit plans that were

part of he Arrangement and, hence, was familiar with the documents that governed the

Arrangement, it had actual or constructive knowledge that the payments it received were

in breach of Koresko *et al.*'s fiduciary duties.

19

**Locke Lord**

51.     Locke Lord represented John Koresko, PennMont Benefit Services, Inc.
("PennMont"), Penn Public Trust ("PPT"), Koresko & Associates, PC ("KAPC"),
Koresko Law Firm ("KLF"), and Lawrence Koresko, among others, in various litigations.
Among other litigations, Locke Lord represented John Koresko, PennMont, PPT, KAPC,
KLF, Lawrence Koresko, and Koresko associates Jeanne Bonney and Larry Townsend in
litigation in the Eastern District of Texas captioned as *Thomas Walter Umphrey, P.C. v.
PennMont Benefit Services, Inc.*, No. 1:12-cv-00355-MAC (E.D. Tx. Jul. 15, 2013). In
connection with that litigation, John Koresko used $167,922.00 in Trust assets to pay
Locke Lord's retainer. In addition, on May 24, 2012, John Koresko transferred $50,000
of Trust assets to Locke Lord by check, apparently in connection with the *Solis v.
Koresko* case.

52.     As the payments Locke Lord received came from accounts denominated
as Trust accounts and as any legal work in *Umphrey* or in *Solis* would have required
Locke Lord attorneys to familiarize themselves with the documents that governed the
Arrangement, Locke Lord had actual or constructive notice that the payments it received
were in breach of John Koresko's fiduciary duties.

53.     In addition, to the extent Locke Lord was representing the Trusts, it owed
the Trusts and the Trusts' constituent employee benefit plans, plan participants and
beneficiaries a fiduciary duty to avoid conflicts of interest and not to accept
representations adverse to its clients' interests. Koresko *et al.* and the Trusts had

20

material, actual, non-waivable conflicts of interest at the time Lock Lord represented

Koresko *et al.* and the Trusts. Locke Lord breached its fiduciary obligations to the

Trusts, the Trusts' constituent employee benefit plans, plan participants and beneficiaries

by, among other things, undertaking representations adverse to the Trusts and accepting

payment for legal work adverse to the Trusts' interests.

**Anderson Kill & Olick**

54.     During the time period of August 29, 2005, to May 8, 2006, the Trusts

paid a total of $101,344.49 to AKO to represent John Koresko in contempt proceedings

in the U.S. District Court, Eastern District of Pennsylvania with respect to the

enforcement of a DOL administrative subpoena. *Chao v. Koresko*, No. 04-MC-74, 2004

WL 1102381 (E.D. Pa. May 11, 2004) *aff'd*, 04-3614, 2005 WL 2521886 (3d Cir. Oct.

12, 2005). AKO's work involved the filing of oppositions to motions to incarcerate Mr.

Koresko and taking appeals of orders that held Mr. Koresko in contempt. All this work

was for the benefit of Koresko *et al.* and adverse to the interests of the Trusts and the

interests of the Trusts' constituent employee benefit plans, plan participants and

beneficiaries.

55.     As the payments came from the Trusts and as AKO had represented

Koresko *et al.* and the Trusts in many other cases that required AKO attorneys to

familiarize themselves with the documents that governed the Arrangement, AKO had

actual or constructive notice that the payments it received were in breach of Koresko *et*

*al.*'s fiduciary duties.

21

56.     In addition, to the extent AKO was representing the Trusts, it owed the Trusts and the Trusts' constituent employee benefit plans, plan participants and beneficiaries a fiduciary duty to avoid conflicts of interest and not to accept representations adverse to its clients' interests. Koresko *et al.* and the Trusts had material, actual, non-waivable conflicts of interest at the time AKO represented Koresko *et al.* and the Trusts.  AKO breached its fiduciary obligations to the Trusts, the Trusts' constituent employee benefit plans, plan participants and beneficiaries by, among other things, undertaking representations adverse to the Trusts and accepting payment for legal work adverse to the Trusts' interests.

### Caplin & Drysdale

57.     During the time period of March 14, 2008 to April 3, 2009, the Trusts paid a total of $107,651.90 to C&D. C&D is a Washington, D.C.-based law firm, which was engaged by John Koresko to, among other things, handle tax cases and prepare tax petitions.

58.     In these petitions, C&D asserted positions, including with regard to the conversion of assets between and among the Trusts, which were adverse to the best interests of the beneficiaries of the Trusts, including members of the Plaintiff class.

59.     As the payments to C & D came directly from CTC accounts in the name of the Trusts and as C&D had direct familiarity with all of the documents relative to the Arrangement in order to handle the tax cases and prepare the aforementioned Petitions, it had actual or constructive notice that the payments it received were in breach of Koresko *et al.*'s fiduciary duties.

22

60.     In addition, to the extent C&D was representing the Trusts, it owed the Trusts and the Trusts' constituent employee benefit plans, plan participants and beneficiaries a fiduciary duty to avoid conflicts of interest and not to accept representations adverse to its clients' interests.  Koresko *et al.* and the Trusts (and its constituent employee benefit plans, plan participants and beneficiaries) had material, actual, non-waivable conflicts of interest at the time C&D performed its work.  C&D breached its fiduciary obligations to the Trusts, the Trusts' constituent employee benefit plans, plan participants and beneficiaries by, among other things, undertaking representations adverse to them and accepting payment for legal work adverse to their interests.

## Samuels, Yoelin Kantor, LLP

61.     SYK is a law firm based out of Portland, Oregon. The firm entered an appearance on behalf of Koresko *et al.*, including PennMont, PPT, KLF, John Koresko, and Lawrence Koresko, in the case of *Bogatay Trust of 2000 v. PennMont Benefit Services, Inc.*, No. 13-cv-0700 (D. Ore.). As of January 7, 2014, John Koresko believed that SYK was current counsel for trust-related matters and indemnity-related matters involving litigation. In the *Bogatay Trust of 2000* matter, filed in April 2013, Mr. Bogatay claimed that the defendants refused to transfer the "cash value life insurance policy" that Mr. Bogatay had "purchased and funded through a trust arrangement with the Koresko Defendants."

62.     As the payments to SYK came from accounts denominated as trust accounts and as the cases SYK handled required SYK attorneys to familiarize themselves

23

with the documents that governed the Arrangement, SYK had actual or constructive notice that the payments it received were in breach of Koresko *et al.*'s fiduciary duties.

63.     In addition, to the extent SYK was representing the Trusts, it owed the Trusts and the Trusts' constituent employee benefit plans, plan participants and beneficiaries a fiduciary duty to avoid conflicts of interest and not to accept representations adverse to its clients' interests.  Koresko *et al.* and the Trusts had material, actual, non-waivable conflicts of interest at the time SYK represented Koresko *et al.* and the Trusts.  SYK breached its fiduciary obligations to the Trusts, the Trusts' constituent employee benefit plans, plan participants and beneficiaries by, among other things, undertaking representations adverse to the Trusts and accepting payment for legal work adverse to the Trusts' interests.

### Jeffrey Nieman

64.     Mr. Nieman represents John Koresko in the Eastern District of Pennsylvania relating to a tax penalty that was assessed against John Koresko personally and against PennMont. Mr. Koresko paid Mr. Nieman out of an account titled to Penn Public Trust, 419 account. Between February 24, 2010 and June 28, 2013, John Koresko transferred $165,800 from this account to Nieman.

65.     As the payments to Nieman came from accounts denominated as trust accounts and as the case Nieman handled required him to familiarize himself with the documents that governed the Arrangement, Nieman had actual or constructive notice that the payments he received were in breach of Koresko *et al.*'s fiduciary duties.

### Gates Halbruner & Hatch ("GHH")

24

66.     During the time period of March 20, 2009 to April 3, 2009, the Trusts paid a total of $41,590.76 to GHH. GHH was retained by CTC in response to the DOL's subpoenaing JGR, which occurred after the Third Circuit issued its decision in *Chao v. Cmty. Trust Co.*, 474 F.3d 75 (3d Cir. 2007), as amended (Mar. 7, 2007), and *Chao* returned to this Court. GHH's invoices record billing time for preparation of a brief in opposition to the DOL's petition to enforce a subpoena against CTC and billing with respect to JGR, including telephone calls with JGR's attorney, reviewing and revising JGR's motion to quash, and reviewing emails from KLF.

67.     As the payments to GHH came from accounts denominated as trust accounts and as the case GHH handled required GHH attorneys to familiarize themselves with the documents that governed the Arrangement and as GHH partner Lowell Gates was familiar with the documents that governed the Arrangement in his role as counsel to CTC, GHH had actual or constructive notice that the payments it received were in breach of Koresko *et al.*'s fiduciary duties.

**Christie Parabue Moreten & Young**

68.     CPMY is a Philadelphia-based law firm and is listed as co-counsel along with Mr. Koresko in the case of *Single Employer Welfare Benefit Plan Trust v. Connelly*, No. 11-5276 (E.D. Pa., Nov. 11, 2011). In that case, Mr. Koresko filed for an emergency injunction in the Montgomery County Court of Common Pleas, seeking to enjoin Claire M. Connelly, an administrator with the American Arbitration Association, from issuing any decision with respect to an arbitration case initiated by beneficiaries of an employee

benefit plan that participated in the Arrangement (See *Langlais v. PennMont Benefit Services*, No. 11-5275, 2012 WL 2849414, at *1 (E.D. Pa. July 11, 2012), *aff'd*, 527 F. App'x 215 (3d Cir. 2013). PennMont, REAL VEBA, and Mr. Koresko were the named defendants in *Langlais*. Id. (Docket No. 1-2). CPMY was paid at least $250,000.00 by Koresko *et al.*, and the payment(s) came from the Trusts' assets.

69.     As the payments to CPMY came from an account denominated as an IOLTA account, i.e. an attorney's account holding client funds, and as any involvement in *Langlais* would have required CPMY attorneys to familiarize themselves with the documents that governed the Arrangement, CPMY had actual or constructive notice that the payments it received were in breach of Koresko *et al.*'s fiduciary duties.

**Jefferson Government Relations ("JGR")**

70.     JGR has been at all material times a lobbying firm in Washington, D.C.  In June 2001, JGR entered into a contract with REAL VEBA Trust, which was signed by John Koresko in his capacity as "Chairman" of PennMont, Plan Administrator.  Among other things, the contract called for a monthly retainer of $15,000 to be paid to JGR. During the time period of May 21, 2002, to June 27, 2005, the Trust sent thirty-four monthly payments, totaling $276,147.93, to JGR. The monthly payments corresponded to the amount requested by JGR in its invoices to PennMont.

71.     JGR invoices contain numerous entries on political activities concerning tax litigation, IRS regulations and activities, and the deductions available to individual employers for participating in the Trust. For example:

26

a.  The June 12, 2002, letter to John Koresko enclosing the May invoice
    charged for ongoing discussions with "you" and "Larry Koresko"
    regarding fundraising events for a congressional candidate; for speaking
    with "you and Larry Koresko" regarding "targeted campaign
    contributions"; and for speaking with Larry Koresko regarding how best to
    involve insurance carriers and their lobbyists in the "legislative effort;

b.  The August 11, 2003, letter listed JGR's activities on behalf of Mr.
    Koresko and PennMont, as, among other things, attending the "NRCC
    summer retreat" with several congressional representatives, holding
    discussions with "you" regarding "Treasury regulations, potential
    litigation approaches, and next steps on legislative strategy," and
    conversations regarding "possible events" for several congressional
    representatives;

c.  The July 8, 2004, letter included a breakfast with a congressional
    Representative, "outlining the agenda for the remainder of the 108th
    Congress" and discussions of "possible approaches to tax shelter issues";
    and

d.  The June 11, 2005, letter listed work performed as discussions with "you
    and the National Republican Congressional Committee about a possible
    conversation between you and Chairman Boehner" and "arranged and
    attended an event with Senate Republican Policy Committee Chairman
    Jon Kyl (R-AZ)."

27

72.     As JGR's lobbying activities would have required it to familiarize itself with the Arrangement and the documents that governed it and as even a cursory examination of the Arrangement's documents would put the reader on notice that the use of the Trusts' assets to finance lobbying was improper, JGR had actual or constructive notice that the payments it received were in breach of Koresko *et al.*'s fiduciary duties.

**Theodore Hobson**

73.     Plaintiff incorporates by reference the allegations set forth above, in paragraphs 46-47, regarding payments to Mr. Hobson and for the benefit of Mr. Daniel.

74.     As the payments to Mr. Hobson came from accounts denominated as trust accounts, Mr. Hobson had actual or constructive notice that the payments were in breach of John Koresko's fiduciary duties.

**Bonnie Koresko**

75.     Bonnie Koresko is John Koresko's ex-wife. She received payments from accounts that included commingled Trust monies. Between November 9, 2010, and September 25, 2013, John Koresko transferred the following moneys to Bonnie Koresko: $25,000 to a personal checking account at Citizens Bank held in the name "Bonnie Jean Koresko, John J Koresko 5th, account number ending in 338, and $10,000.00 to a personal savings account at Citizens Bank held in the names Bonnie Jean Koresko and John J Koresko 5th, account number ending in 4511.

28

76.     Upon information and belief, Bonnie Koresko had actual or constructive
notice that the payments she received were in breach of John Koresko's fiduciary duties.

### Count I – ERISA, 29 U.S.C. § 1132(a)(2)
### Plaintiffs on Behalf of The Class of Employee Benefit Plans Covered By
### ERISA vs. the Co-Fiduciary Defendants

77.     Plaintiffs incorporate paragraphs 1-76, above, as if fully set forth herein.

78.     The Co-Fiduciary Defendants:

    a. Knowingly participated in and facilitated their co-fiduciaries' misconduct,
including their co-fiduciaries' violations of ERISA §§ 404 and 406;

    b. Failed to take reasonable steps to prevent or remedy the fiduciary breaches
of their co-fiduciaries in violation of ERISA § 405;

    c. Failed to perform their fiduciary duties in accord with the prudent man
standard of care set forth in ERISA § 404; and

    d. Engaged in other activity which violated ERISA, was not in accord with
provisions of the employee benefit plan documents and was contrary to
the best interests of the participants and the beneficiaries of the employee
benefit plans.

**WHEREFORE**, plaintiffs request that judgment be entered in their favor and in
favor of the classes they seek to represent on behalf of the Trusts and on behalf of the
ERISA employee benefit plans whose assets were held by the Trusts and against the Co-
Fiduciary Defendants.  Plaintiffs further request that:

1.     The Co-Fiduciary Defendants be held personally liable to make good to
the employee benefit plans any losses to the plans resulting from each breach of their

29

own and their co-fiduciaries' responsibilities, obligations, or duties and to restore to the

plans any profits which have been made through use of assets of the plans by the Co-

Fiduciary Defendants or their co-fiduciaries;

     2.     Plaintiffs be awarded reasonable attorney's fees and costs; and

     3.     The Court order such other equitable or remedial relief as it deems

appropriate.

### Count II – Common Law Breach of Fiduciary Duties
### Plaintiffs on Behalf of The Class of Employee Benefit Plans Not Covered By ERISA
### vs. the Co-Fiduciary Defendants

     79.     Plaintiffs incorporate paragraphs 1-78, above, as if fully set forth herein.

     80.     The Co-Fiduciary Defendants:

     a.   Knowingly participated in and facilitated their co-fiduciaries' misconduct;

     b.   Failed to take reasonable steps to prevent or remedy the fiduciary breaches

        of their co-fiduciaries;

     c.   Failed to perform their fiduciary duties in accord with a reasonable

        standard of care; and

     d.   Engaged in other activity which was not in accord with provisions of the

        employee benefit plan documents and was contrary to the best interests of

        the participants and the beneficiaries of the employee benefit plans.

     **WHEREFORE**, plaintiffs request that judgment be entered in their favor and in

favor of the classes they seek to represent on behalf of the Trusts and on behalf of the

non-ERISA employee benefit plans whose assets were held by the Trusts and against the

Co-Fiduciary Defendants.  Plaintiffs further request that:

1. The Co-Fiduciary Defendants be held personally liable to make good to the employee benefit plans any losses to the plans resulting from each breach of their own and their co-fiduciaries' responsibilities, obligations, or duties and to restore to the plans any profits which have been made through use of assets of the plans by the Co-Fiduciary Defendants or their co-fiduciaries; and

2. The Court order such other equitable or remedial relief as it deems appropriate.

### Count III – ERISA, 29 U.S.C. § 1132(a)(3)
### Plaintiffs on Behalf of The Class of Employee Benefit Plans Covered By ERISA vs. the Recipient Defendants

81.     Plaintiffs incorporate paragraphs 1-80, above, as if fully set forth herein.

82.     The fees paid out of the Trusts' assets to Recipient Defendants were paid in breach of Koresko *et al.*'s fiduciary duties to the ERISA plans whose assets were held by the Trusts. The payments were also prohibited transactions under ERISA, prohibited acts of self-dealing, and violative of the terms of the employee benefit plans whose assets were held by the Trusts.

83.     The Recipient Defendants had actual or constructive notice that the payments they received violated both ERISA and the terms of the employee benefit plans whose assets were held by the Trusts.

84.     Plaintiffs, on behalf of the Trusts and on behalf of the ERISA employee benefit plans whose assets were held by the Trusts, have standing to assert a cause of action for restitution of the fees to the Trusts or for disgorgement of the fees and disgorgement of any profits derived therefrom. *Harris Trust & Sav. Bank v. Salomon Smith Barney, Inc.*, 530 U.S. 238, 250 (2000).

31

**WHEREFORE**, plaintiffs request that judgment be entered in their favor and in favor of the classes they seek to represent on behalf of the Trusts and on behalf of the ERISA employee benefit plans whose assets were held by the Trusts and against the Recipient Defendants.  Plaintiffs further request that:

1. The Recipient Defendants be ordered to account for and disgorge to the Trusts:

   a.   All fees paid to them by the Trusts or out of the Trusts' assets; and

   b.   Any profits derived from the fees.

2. The Trusts' be awarded pre-judgment interest;

3. Plaintiffs be awarded reasonable attorney's fees and costs; and

4. The Court order such other equitable relief as it deems appropriate.

### Count IV – Common Law Equitable Restitution or Disgorgement
### Plaintiffs on behalf The Class of Employee Benefit Plans Not Covered By
### ERISA vs. the Recipient Defendants

85.      Plaintiffs incorporate paragraphs 1-84, above, as if fully set forth herein.

86.      The fees paid out of the Trusts' assets to Recipient Defendants were paid in breach of Koresko *et al.*'s fiduciary duties to the non-ERISA plans whose assets were held by the Trusts.  The payments were also acts of self-dealing and violative of the terms of the non-ERISA employee benefit plans whose assets were held by the Trusts.

87.      The Recipient Defendants had actual or constructive notice that the payments they received violated both Koresko *et al.*'s fiduciary duties and the terms of the non-ERISA employee benefit plans whose assets were held by the Trusts.

88.      Plaintiffs, on behalf of the Trusts and any non-ERISA plans whose assets were held by the Trusts, have a cause of action for restitution of the fees to the Trusts or

32

for disgorgement of the fees and disgorgement of the Recipient Defendants' profits

derived therefrom. *Restatement (Second) of Trusts* §§ 284, 291, 294, 295, 297 (1959).

**WHEREFORE**, plaintiffs request that judgment be entered in their favor and in

favor of the classes they seek to represent on behalf of the Trusts and on behalf of the

non-ERISA employee benefit plans whose assets were held by the Trusts and against the

Recipient Defendants.  Plaintiffs further request that:

1.  The Recipient Defendants be ordered to account for and disgorge to the Trusts:

    a.   All fees paid to them by the Trusts or out of the Trusts' assets; and

    b.   Any profits derived from the fees.

2.  The Trusts' be awarded pre-judgment interest;

3.  Plaintiffs be awarded reasonable attorney's fees and costs; and

4.  The Court order such other equitable relief as it deems appropriate.


### Count V - ERISA, 29 U.S.C. § 1132(a)(3)
### Plaintiffs on Behalf of The Class of Employee Benefit Plans Covered By
### ERISA vs. the Commission Recipient Defendants

89.   Plaintiffs incorporate paragraphs 1-88, above, as if fully set forth herein.

90.   The commissions paid to the Commission Recipient Defendants were paid

for the personal benefit of John Koresko and other fiduciaries or for the benefit of entities

owned and controlled by John Koresko.  As such, the commissions violated ERISA §

406.

91.   The Commission Recipient Defendants were either fiduciaries themselves

or knowingly participated in and facilitated these violations of ERISA § 406.

33

92.     Plaintiffs, on behalf of the Trusts and on behalf of the ERISA employee benefit plans whose assets were held by the Trusts, have standing to assert a cause of action for disgorgement of the commissions.

**WHEREFORE**, plaintiffs request that judgment be entered in their favor and in favor of the classes they seek to represent on behalf of the Trusts and on behalf of the ERISA employee benefit plans whose assets were held by the Trusts and against the Commission Recipient Defendants.  Plaintiffs further request that:

1. The Commission Recipient Defendants be ordered to account for and disgorge to the Trusts:

   a.     All commissions paid to them or entities they owned or controlled in connection with the sale of insurance policies to the Trusts; and

   b.     Any profits derived from said commissions.

2. Plaintiffs be awarded reasonable attorney's fees and costs; and

3. The Court order such other equitable relief as it deems appropriate.

### Count VI – Common Law Breach of Fiduciary Duty, Knowing Participation in a Fiduciary's Breach and Equitable Disgorgement
### Plaintiffs on Behalf of The Class of Employee Benefit Plans Not Covered By ERISA vs. the Commission Recipient Defendants

93.     Plaintiffs incorporate paragraphs 1-92, above, as if fully set forth herein.

94.     The commissions paid to the Commission Recipient Defendants were paid for the personal benefit of John Koresko and other fiduciaries or for the benefit of entities owned and controlled by John Koresko.  As such, acceptance of the commissions breached the fiduciary duties John Koresko owed to non-ERISA employee benefit plans.

34

95.     The Commission Recipient Defendants were either fiduciaries themselves or knowingly participated in, facilitated and benefited from these breaches.

**WHEREFORE**, plaintiffs request that judgment be entered in their favor and in favor of the classes they seek to represent on behalf of the Trusts and on behalf of the non- ERISA employee benefit plans whose assets were held by the Trusts and against the Commission Recipient Defendants.  Plaintiffs further request that:

4.   The Commission Recipient Defendants be ordered to account for and disgorge to the Trusts:

       a.     All commissions paid to them or entities they owned or controlled in connection with the sale of insurance policies to the Trusts; and

       b.     Any profits derived from said commissions.

5.   Plaintiffs be awarded reasonable attorney's fees and costs; and

6.   The Court order such other equitable relief as it deems appropriate.

### Count VII – Common Law Breach of Fiduciary Duty and Malpractice
### Plaintiffs vs. the Attorney Defendants Who Represented the Trusts

96.     Plaintiffs incorporate paragraphs 1-95, above, as if fully set forth herein.

97.     The Attorney Defendants Who Represented the Trusts owed their clients – the REAL VEBA Trust and the SEWBPT as well as the beneficiaries of the Trusts – the fiduciary duties all attorneys owe their clients to avoid conflicts of interest and not to accept representations directly adverse to their clients' interests.

98.     The conflicts of interest between Koresko *et al*. and the Trusts were direct, material and non-waivable.

35

99.     Even if waivable, any waiver provided by Koresko *et al.* on behalf of the Trusts was void *ab initio* and of no effect.

100.     The Attorney Defendants Who Represented the Trusts breached their fiduciary obligations to the Trusts and failed to meet basic standards of professional care by:

a.     Agreeing to simultaneously represent the Trusts (and/or its constituent employee benefit plans, plan participants, and beneficiaries) and Koresko *et al.*;

b.     Advocating positions on behalf of Koresko *et al.* that were directly adverse to the interests of the Trusts (and/or its constituent employee benefit plans, plan participants, and beneficiaries);

c.     Failing to insist that the Trusts retain independent counsel and appoint an independent trustee *ad-litem* to handle all matters in which the Trusts' interests were adverse to those of Koresko *et al.*

d.     Accepting payment from the Trusts for legal work against its (and/or its constituent employee benefit plans', plan participants', and beneficiaries') interests.

**WHEREFORE**, plaintiffs request that judgment be entered in their favor on behalf of the Trusts and on behalf of the classes plaintiffs propose to represent and against The Attorney Defendants Who Represented the Trusts.  Plaintiffs further request that:

1.     The Attorney Defendants be ordered to account for and disgorge to the Trusts:

36

        a.      All fees paid to them by the Trusts or out of the Trusts' assets; and

        b.      Any profits derived from the fees.

2.      The Trusts' be awarded pre-judgment interest; and

3.      Plaintiffs be awarded compensatory damages, punitive damages,

reasonable attorney's fees and costs.

Respectfully submitted this 19th day of March, 2015,
Philadelphia, Pennsylvania

/s/ Ira B. Silverstein
Ira B. Silverstein, Esq.
c/o Morgado P.A.
223 Park Ave S. #84164
New York, NY 10003
Phone: (917) 909-9969
Email: irasilverstein@mac.com

*Attorney for Plaintiffs*