**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| HARVEY KALAN, M.D.; THE HARVEY KALAN, M.D., INC. EMPLOYEE WELFARE BENEFIT PLAN; PAMELA K. ERDMAN, M.D.; THE DR. PAMELA K. ERDMAN, M.D., INC. EMPLOYEE WELFARE BENEFIT PLAN; DRS. MARTIN & ELISSA ZENNI; THE M&E ZENNI INC., WELFARE BENEFIT PLAN; individually and on behalf of all others similarly situated, | **C.A. No.: 2:15-cv-01435-WB**<br><br>**CLASS ACTION**<br><br>**JURY TRIAL DEMANDED AS TO ALL NON-ERISA CLAIMS** |

Plaintiffs,

vs.

FARMERS & MERCHANTS TRUST COMPANY OF CHAMBERSBURG AS SUCCESSOR BY MERGER TO COMMUNITY TRUST COMPANY; LAWRENCE KORESKO; KORESKO FINANCIAL, LLP; FREEDOM BROKERS, LLC; PENNMONT BENEFITS, INC.; LINCOLN NATIONAL CORPORATION; SAMUELS, YOELIN KANTOR, LLP; JEFFREY NIEMAN; LOCKE LORD BISSELL & LIDDELL, LLP; ANDERSON KILL & OLICK, P.C.; CAPLIN & DRYSDALE, CHARTERED; GATES HALBRUNER & HATCH and its successor, HALBRUNER HATCH & GUISE, LLP; CHRISTIE PARABUE MORETEN & YOUNG and its successor, CHRISTIE SULLIVAN & YOUNG PC; LAW OFFICES OF  SCOTT ALAN ORTH, PA, sued and served herein as Doe Number 1; AND JOHN DOE COMPANIES 2-50.

Defendants

## FIRST AMENDED COMPLAINT

1

Plaintiffs Harvey Kalan, M.D., the Harvey Kalan, M.D., Inc. Employee Welfare Benefit Plan, Pamela K. Erdman, M.D., the Dr. Pamela K. Erdman, M.D., Inc. Employee Welfare Benefit Plan, Drs. Martin & Elisa Zenni, and the M&E Zenni, Inc. Welfare Benefit Plan, hereby bring this complaint on their own behalf and on behalf of a class of similarly situated employee benefit plans and their participants and beneficiaries against defendants Farmers & Merchants Trust Company of Chambersburg as successor by merger to Community Trust Company; Lawrence Koresko; Koresko Financial LLP; Freedom Brokers, LLC; PennMont Benefits, Inc.; Lincoln National Corporation; Samuels, Yoelin Kantor, LLP; Jeffrey Neiman; Locke Lord Bissell & Liddell, LLP; Anderson Kill & Olick, P.C.; Caplin & Drysdale, Chartered; Gates Halbruner & Hatch and its successor, Halbruner Hatch & Guise, LLP; Christie Parabue Moreten & Young and its successor, Christie Sullivan & Young PC; Law Offices of Scott Alan Orth, P.A., sued and served herein as Doe Number 1; and John Doe Companies 2-50.

## Preliminary Statement

1.     Between 2004 and the end of 2013, John Koresko and affiliated individuals and entities ("Koresko *et al.*), in the course of operating a multiple employer welfare arrangement known commercially as the REAL VEBA ("the Arrangement" or "the Koresko Arrangement"), systematically converted and misused the assets of two trusts, the REAL VEBA Trust and the Single Employer Welfare Benefit Plan Trust ("the SEWBPT") (collectively "the Trusts"). The Trusts were created to hold assets for the exclusive benefit of the participants and beneficiaries of the Arrangement, i.e. employees of participating employers and their designated beneficiaries.

2

2.       Much of the defalcation consisted of using the Trusts' assets to pay for services rendered for Mr. Koresko's personal benefit, for the benefit of companies he owned and controlled, and for the benefit of certain participating employers who had claimed tax deductions related to the Arrangement.   These expenditures are set forth in detail in the Memorandum Opinion issued in *Perez v. Koresko et al*., 2:09-cv- 00988-MAM, E.D. PA. Docket No. 1134, which is incorporated herein by reference ("the Memorandum Opinion").   In addition, Koresko *et al*. converted over $35 million of the Trusts' assets through unauthorized and improper loans that stripped the Trusts of cash value accumulated in life insurance policies.   The policies were owned by the Trusts for the benefit of the individual employee benefit plans established by each participating employer. As the Memorandum Opinion explains, all of these expenditures and loans were in breach of numerous provisions of the Employee Retirement Income Security Act of 1974 as amended ("ERISA") and breached fiduciary duties owed by Mr. Koresko and others pursuant to ERISA and common law.

3.       The defendants in the instant case were either co-fiduciaries who failed to take appropriate steps to prevent the conversions, co-fiduciaries or parties-in-interest who improperly benefited from transactions, recipients of the improperly spent funds, or parties who otherwise knowingly participated in the fiduciary breaches.   This lawsuit, brought under ERISA and under state law, seeks certification of the alleged plaintiff classes, and, on behalf of those classes: (i) disgorgement of all moneys paid by the Trusts to the defendants who received the improper expenditures, (ii) disgorgement of all profits made as a result of improper or prohibited transactions, (iii) make-whole remedies

against the co-fiduciaries, (iv) disgorgement of insurance commissions paid in violation

of ERISA and common law, and (v) such other relief as the Court deems appropriate.

## PARTIES

4.      Plaintiffs are:

a.      Harvey Kalan, M.D., ("Dr. Kalan"), a citizen of California and a

participant in and fiduciary of the Harvey Kalan, M.D., Inc. Employee Welfare Benefit

Plan;

b.      The Harvey Kalan, M.D., Inc. Employee Welfare Benefit Plan

("the Kalan WBP"), an employee benefit plan within the meaning of ERISA.  The Kalan

WBP was established to provide employee benefits through the Koresko Arrangement;

c.      Pamela K. Erdman, M.D. ("Dr. Erdman"), a citizen of Georgia and

a participant in and fiduciary of the Dr. Pamela K. Erdman, M.D., Inc. Employee Welfare

Benefit Plan;

d.      The Dr. Pamela K. Erdman, M.D., Inc. Employee Welfare Benefit

Plan ("the Erdman WBP"), an employee benefit plan within the meaning of ERISA.  The

Erdman WBP was established to provide employee benefits through the Koresko

Arrangement;

e.      Drs. Martin & Elisa Zenni ("the Zennis"), citizens of Florida and

fiduciaries, participants and beneficiaries of the M&E Zenni Welfare Benefit Plan. Drs.

Martin & Elisa Zenni are both owner/employees of M&E Zenni Inc., the sponsoring

employer of the Zenni WBP; and

f. The M&E Zenni Welfare Benefit Plan ("the Zenni WBP"), an employee benefit plan in which only owner-employees or their spouses participate. The Zenni WBP was established to provide benefits through the Koresko Arrangement.

5. Defendants are:

a. Farmers & Merchants Trust Company of Chambersburg as successor by merger to Community Trust Company ("CTC"), a trustee of the Trusts and a fiduciary under common law and pursuant to ERISA;

b. Lawrence Koresko, a principal of many of the entities that functioned as fiduciaries within the Arrangement and a recipient of commissions paid on the insurance policies purchased as part of the Arrangement;

c. Koresko Financial LP ("Koresko Financial"), a Pennsylvania limited partnership with its principal place of business in Bridgeport, Pennsylvania. Upon information and belief, Koresko Financial was a vehicle through which John and Lawrence Koresko were paid commissions by the insurance companies that participated in the Arrangement. Upon information and belief, it was also utilized to hide converted assets.

d. Freedom Brokers, LLC ("Freedom Brokers"), a Pennsylvania limited liability company with its principal place of business in Bridgeport, Pennsylvania. Upon information and belief, Freedom Brokers was another vehicle through which John and Lawrence Koresko were paid commissions by the insurance companies that participated in the Arrangement. It was also utilized to hide converted assets.

5

e.      PennMont Benefits, Inc., a Delaware corporation with its principal place of business at the same address as Koresko Financial.  PennMont Benefits, Inc. is the general partner of Koresko Financial and its officers are John and Lawrence Koresko.

f.      Lincoln National Corporation ("Lincoln National"), a financial services company;

g.      Samuels, Yoelin Kantor, LLP ("SYK"), a law firm with offices at 111 SW 5th Avenue, Suite 3800, Portland, OR 97204;

h.      Jeffrey A. Neiman ("Neiman"), an attorney with offices at 1 Financial Plaza, Suite 2612, Fort Lauderdale, FL 33394;

i.      Locke Lord Edwards, a law firm and successor by merger to Locke Lord Bissell & Liddell, LLP ("Locke Lord") with offices at 2800 JPMorgan Chase Tower, 600 Travis, Houston, TX 7700;

j.      Anderson Kill & Olick, P.C. ("AKO"), a law firm with offices at 1600 Market Street, Suite 2500, Philadelphia, PA 19103;

k.      Caplin & Drysdale ("C&D"), Chartered, a law firm with offices at One Thomas Circle NW, Suite 1100, Washington, D.C.;

l.      Gates Halbruner & Hatch ("GHH") and its successor, Halbruner Hatch & Guise, LLP, a law firm with offices at 2109 Market Street, Camp Hill, PA 17011;

m.      Christie Parabue Moreten & Young ("CPMY") and its successor, Christie Sullivan & Young PC, a law firm with offices at 1880 JFK Boulevard, 10th Floor, Philadelphia, PA 19103;

n.      Law Offices of Scott Alan Orth ("Orth"), a law firm with offices at 3860 Sheridan Street, Hollywood, FL 33021, sued and served herein as Doe Number 1; and

o.      Defendants DOES 2 through 50, inclusive, whose names and capacities are presently unknown to plaintiffs, and who are being sued under fictitious names until their identities are learned, at which time leave to amend will be requested. Upon information and belief, the defendant DOES include other individuals and/or business entities, including those owned or controlled by Koresko *et al*., who possess or received funds generated through the Koresko Arrangement.

6.      Plaintiffs allege:

a.      Defendants CTC, Lawrence Koresko, and Lincoln National were, at relevant times, fiduciaries of the employee benefit plans. They will be referred to collectively as the "Fiduciary Defendants" or the "Co-Fiduciary Defendants;"

b.      Defendants Lawrence Koresko, Koresko Financial LLP, Freedom Brokers, LLC, PennMont Benefits, Inc. and Does 2-50 were recipients of commissions paid by various insurance companies that sold policies to the Trusts.  They will be referred to collectively as the "Commission Recipient Defendants;"

c.      Defendants SYK, Neiman, Locke Lord, AKO, C&D, GHH, CPMY, and Orth are law firms or attorneys-at-law. They will be referred to collectively as the "Attorney Defendants."

d.      All defendants were recipients of plan assets and they will be referred to collectively as the "Recipient Defendants" in the appropriate context;

7

## JURISDICTION AND VENUE

7.     As most, if not all, of the benefit plans whose assets were held by the Trusts were employee benefit plans within the meaning of ERISA, and as Koresko *et al.*'s conversion of the Trusts' assets and payments to the Recipient Defendants violated numerous provisions of ERISA and of the plaintiff benefit plans, this action seeks appropriate relief for violations of §§ 404 and 406 of ERISA (29 U.S.C. §§ 1104 and 1106) pursuant to § 502(a)(2) and (a)(3) of ERISA (29 U.S.C. § 1132(a)(2) and (a)(3)). With respect to the Fiduciary Defendants, plaintiffs also allege violations of § 405 of ERISA. This Court has original jurisdiction pursuant to §502(e)(1) of ERISA (29 U.S.C. § 1132(e)(1)).

8.     This Court has supplemental jurisdiction over the state law claims asserted pursuant to 28 U.S.C. § 1367(a).

9.     Venue is appropriate in the Eastern District of Pennsylvania, as the employee benefit plan plaintiffs were administered in the district, many of the defendants conduct business in the district, and a substantial part of the acts and omissions giving rise to the claims took place in the district.

## Class Allegations

10.     Plaintiffs seek to pursue this action on their own behalf and on behalf of a class of all participants in and beneficiaries of benefit plans whose assets are held by the REAL VEBA Trust or the SEWBPT, and on behalf of all benefit plans whose assets are held by the REAL VEBA Trust or the SEWBPT.  In addition, Plaintiffs seek to represent two sub-classes: (1) a sub-class of all benefit plans governed by ERISA, as well as said

plans' participants and beneficiaries; and (2) a sub-class of all benefit plans not governed by ERISA, as well as said plans' participants and beneficiaries. The class members of both sub-classes are readily ascertainable from the files and records of Koresko *et al.*

11.     The assets of over 200 employee benefit plans are held by the Trusts. These plans, in aggregate, have over 500 participants and beneficiaries, making joinder of all class members impracticable.

12.     There are questions of law and of fact common to the class.

13.     The common questions of fact include, but are not limited to:

a.      Whether the Recipient Defendants had actual or constructive knowledge that the funds they were receiving were conveyed in breach of Koresko *et al.*'s fiduciary duties;

b.      Whether a conflict of interest existed between Koresko *et al.*'s interests and those of the Trusts;

c.      The steps, if any, taken by the Attorney Defendants who represented the Trusts to insure that the interests of the Trusts and the Trusts' beneficiaries were not compromised;

d.      The amount of commissions paid to the Commission Recipient Defendants;

e.      Whether the Co-Fiduciary Defendants breached their obligations under 29 U.S.C. §§ 1105 and 1109.

14.     The common questions of law include, but are not limited to:

a.      Whether Koresko *et al.*'s use of the Trusts' assets to pay the Recipient Defendants violated provisions of ERISA, provisions of relevant state law or provisions of the benefit plans whose assets were being held by the Trusts;

b.      Whether disgorgement of fees paid to the Recipient Defendants or such other relief as the Court may consider is "other appropriate equitable relief" within the meaning of § 502(a)(3) of ERISA and appropriate relief under common law principles;

c.      The scope of the Co-Fiduciaries obligations to the various employee benefit plans under ERISA and state law;

d.      The appropriate relief, should it be determined that the Co-Fiduciary Defendants were in breach of their obligations to the employee benefit plans;

e.      Whether the Commission Recipient Defendants violated § 406 of ERISA and state law by accepting the commissions;

f.      With respect to the Commission Recipient Defendants who are determined not to have been fiduciaries or parties-in-interest, whether disgorgement of the commissions paid or such other relief as the Court may consider is "other appropriate equitable relief" within the meaning of § 502(a)(3) of ERISA and appropriate relief under common law principles; and

g.      Whether the conflicts of interest between the Koresko related clients represented by the Attorney Defendants were waived and are waivable.

15.     The claims of the representative parties are typical of the claims of the class.

10

16.     The representative parties will fairly and adequately represent the interests of the class.

17.     The questions of law or fact common to class members predominate over any questions affecting only individual members, and a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.

## OPERATIVE ALLEGATIONS

### Origins of the Koresko Arrangement

18.     Koresko *et al*. are a group of interrelated entities together with their principals and certain employees.  The entities were all created and established by John and Lawrence Koresko as an entrepreneurial vehicle designed to take advantage of section 419(A)(f)(6) of the Internal Revenue Code ("IRS" or "Code).

19.     Prior to the 1984 passage of §§ 419 and 419A of the IRC, expenditures for employee benefits were deductible under IRC § 162.  *See Greensboro Pathology Associates, P.A. v. U.S.*, 698 F.2d 1196 (Fed. Cir. 1982).  Sections 419 and 419A placed substantial limitations on the deductibility of these expenses; however, Congress saw fit to carve out an exception for "10 or more employer plans."  For "10 or more employer plans," the newly adopted limitations did not apply.  IRC § 419A(f)(6).

20.     Though the language of § 419A(f)(6) is deceptively simple, the scope and applicability of the § 419A(f)(6) exception to the general § 419 limitations on the deductibility of expenditures for employee benefits has long been a subject of dispute. The Code itself states only that to come under the § 419A(f)(6) exception more than one employer must contribute to the plan, no employer may normally contribute more than

10% of the total, and the plan may not maintain "experience-rating arrangements with respect to individual employers."  IRC § 419A(f)(6).

21.     In 1995, the Service issued Notice 95-34 to "alert taxpayers and their representatives to some of the significant tax problems that may be raised by [trust] arrangements [which claim to satisfy § 419A(f)(6)]."  The notice advised that such arrangements might not satisfy § 419A(f)(6) if they are actually providing deferred compensation, if they are in fact separate plans maintained for each employer, or if they are experience-rated.

22.     The issues raised by Notice 95-34 were parsed in *Booth v. C.I.R.*, 108 T.C. 524 (U.S. Tax Ct. 1997).  The Tax Court, while disagreeing with the Commissioner's view that the plan in *Booth* was actually one of deferred compensation, found the plan did not satisfy § 419A(f)(6) because it maintained separate accounts for each employer and the employees could only look to their employer's account to pay benefits.  Hence, the Court reasoned, the plan was actually an amalgamation of separate plans.  Moreover, the Court found that the arrangements had the effect of adjusting benefits based on prior experience and, therefore, the plan was an experience rating arrangement.  As a consequence, the *Booth* plan did not satisfy § 419A(f)(6).

23.     After the *Booth* decision, Koresko and other entrepreneurs sought to take advantage of § 419(A)(f)(6) by marketing "plans" that claimed to come under the § 419(A)(f)(6) exception to the limitations on the deductibility of welfare benefit expenditures (hereinafter "419A(f)(6) plans").

**The Arrangement Itself**

24.      The Koresko Arrangement claimed to offer a § 419(A)(f)(6) vehicle

through which owner/employees could purchase cash value life insurance and deduct the

premiums as business expenses.

25.      Though the documents Koresko drafted to implement the Arrangement

were complex to the point of unintelligibility and contained numerous internal

contradictions that made key provisions meaningless, the basic structure relevant to this

complaint was relatively straightforward and is best described in the words of one of

Koresko's marketing pamphlets.

26.      In providing an example of how the Arrangement worked, the pamphlet

posited a "Mr. X," who owned a business and a "Joe Honest," Mr. X's insurance

agent/financial advisor. Joe introduced Mr. X to PennMont Benefit Services, the

company Koresko utilized to nominally run the Arrangement, and, after Mr. X decided to

enter into the Arrangement:

> [Mr. X] asked Joe to obtain a cash value policy for himself
> and term insurance for the other participants. Mr. X
> informed Joe that he desired to shelter $100,000 in the
> VEBA before year end. Mr. X asked Joe to determine if
> that was permissible.
>
> Joe submitted a Proposal Request form to **Penn-Mont
> Benefit Services. Penn-Mont** produced a proposal which
> illustrated potential tax savings, a death benefit for
> employee (A) for $450,000; (B) for $250,000; and (C) for
> $300,000, and a $1.5 million death benefit for Mr. X, the
> owner/employee; and a cash value build-up which would
> be used to pay severance benefits or distributed to the
> participants upon plan termination.
>
> Pleased with the result, Mr. X forwarded a check in the
> amount of $100,000 payable to Commerce Bank, N.A., the
> trustee, before December 31. After clearance of the check,
> the corporation, trustee, and employees completed the life

insurance applications on behalf of Mr. X and employees
A. B and C. After approval, the trustee paid the premiums.

27.    A prospective participating employer was required to sign an Adoption

Agreement which:

a.    Established the employer's own welfare benefit plan;

b.    Adopted a Koresko prepared prototype as the terms of the benefit

plan; and

c.    Agreed to the terms of a pre-existing trust (either the REAL VEBA

Trust or the SEWBPT) created by Koresko.

28.    The Trusts then functioned as a pass-through vehicle, receiving the

insurance premiums paid by the employer and then paying them to the insurance

companies.

29.    The Trusts were also named as the owners and beneficiaries of the policies

f/b/o the employer's welfare benefit plan.  When benefits were to be paid, typically upon

the death of a participant, the insurance company would pay the death benefit to the

Trusts who were, in turn, supposed to pay the benefit to the participant's designated

beneficiary.

30.    Alternatively, an employer could terminate the plan and the accumulated

cash value of the insurance policies would be distributed to the plan participants pursuant

to a formula that resulted in the owner/employees receiving all or virtually all of the cash

value.

**The Fiduciary Breaches**

31.     As alleged and established in *Perez v. Koresko et al.*, since 2008 at the very latest, Koresko *et al*. converted the Trusts' assets to their personal benefit rather than hold the assets for the exclusive benefit of the employer benefit plans and the plans' participants and beneficiaries.

32.     The conversions and numerous other fiduciary breaches are detailed in the Memorandum Opinion and are incorporated herein by reference.  In summary, Koresko *et al*. converted many millions of dollars from the Trusts through various forms of self-dealing and through loans that stripped the insurance policies of substantial portions of their cash value.  The money was used for Koresko's own personal benefit including, for example, the purchase of condominiums in Nevis.

33.     Though not discussed in the Memorandum Opinion, in addition to the various breaches described therein, Koresko, both directly and through the Commission Recipient Defendants, received millions of dollars in commissions from the insurance companies that sold policies to the various employee benefit plans.  The payment and receipt of these commissions was in violation of § 406 of ERISA, 29 U.S.C. § 1106.

**The Involvement of the Various Defendants**

CTC

34.     CTC was, at relevant times, trustee of the Trusts and a fiduciary of the plaintiff employee benefit plans, both under ERISA and state law.  As trustee, it controlled all of the assets of the Trusts during the period of time of the various conversions.

35.     As described in the Memorandum Opinion, ¶¶ 11-18 (internal citations to

the record in *Perez*):

> 11.     On or around March 10, 2002, Community Trust
> Company ("CTC") entered into an amended and restated
> Master Trust Agreement for the Regional Employers
> Assurance League Voluntary Employees' Beneficiary
> Association ("REAL VEBA") with PennMont, naming CTC
> as the Trustee of the REAL VEBA.  See generally GX48.
> Lowell Gates, chairman of the Board of CTC, John Koresko,
> and Lawrence Koresko each signed the Master Trust
> Agreement, which John Koresko had drafted.  GX48; GX176
> at 34:21-34:23 (Bonney Dep., July 30, 2014).
>
> 12.     On or around December 30, 2002, CTC entered into
> another Master Trust Agreement naming CTC as the Trustee
> for the Single Employer Welfare Benefit Plan ("SEWBP").
> GX49.  Similar to REAL VEBA's trust agreement, Mr. Gates,
> John Koresko, and Lawrence Koresko each signed the Master
> Trust Agreement for the Single Employer Welfare Benefit
> Plan Trust ("SEWBPT").  GX49.
>
> 13. CTC was the only trustee of the Plans from March 2002 to
> November 30, 2008. PennMont had rejected a "co-trustee"
> model with CTC, seeking instead a "custodian agreement."
> GX52 (Email from Jeanne Bonney to Donald Walters, Vice
> President, CTC).
>
> 14. On November 30, 2008, CTC merged with Farmers &
> Merchants Trust Company of Chambersburg ("F&M Trust").
> July 17, 2009, Tr. 13:16-13:18.
>
> 15. After the merger, CTC ceased to exist as an independent
> entity and its Board of Directors was dissolved.  GX156 at
> 36:2-36:4, 37:6-37:25 (Gates Dep., Mar. 12, 2014).  Mr. Gates
> involvement with the Trust ended at the time of the merger.
> Id. at 8:14-8:22 (Gates Dep., Mar. 12, 2014).
>
> 16. F&M Trust was the successor by merger to CTC, and thus
> became the Trustee and a named fiduciary of the Plans.
> Docket No. 282, 268.
>
> 17. On July 14, 2009, the Secretary of Labor ("the Secretary"),
> U.S. Department of Labor ("DOL"), moved for a Temporary
> Restraining Order ("TRO") and Preliminary Injunction
> enjoining Mr. Koresko from dismissing F&M Trust and
> installing PPT as Trustee. Docket No. 63.  While that motion
> pending, Judge Jones issued a "standstill Order" on November

6, 2009, prohibiting all parties from transferring "any funds of any kind for any purpose."  Docket No. 151.

18. F&M Trust continued as the sole Trustee, as memorialized in Judge Jones' Orders, until January 15, 2010, when Judge Jones denied the Secretary's motion, and issued an Order permitting PPT to become the Trustee.  Docket Nos. 165, 181, 195.

36.    CTC at all relevant times had actual or constructive knowledge that Koresko *et al.* were engaged in self-dealing and using Trust assets for improper purposes and violating ERISA § 406. Yet, instead of taking reasonable steps to prevent or remedy the breaches, CTC facilitated them by transferring Trust assets to Koresko controlled entities.

37.    CTC also failed to perform its fiduciary duties in accord with the prudent man standard of care.  Instead, CTC recklessly consented to all requests for funds made by Koresko *et al.* and allowed Koresko *et al.* to misrepresent themselves as CTC in dealings with third-parties, thus enabling additional conversions.

38.    CTC's typical negligent conduct is described in the Memorandum Opinion (¶¶ 53-56) as follows:

> 53. To transfer money out of the Trusts, PennMont would send emails to CTC or F&M Trust employees, directing CTC or F&M Trust as trustee to transfer funds from the Trusts to various other accounts.  June 9, 2014, Tr. 62:18-63:4 (Sweeting); see, e.g., GX58, 60, 62, 63, 65, and GX2a1 to 2a2, 2a5, 2a7, 2a8, 2a13, 2a14, 2a15.

> 54. Jeanne Bonney typically sent these emails to CTC and F&M Trust on behalf of PennMont, using either a PennMont email account or some sort of Koresko law firm email account.  See, e.g., GX2a19; GX2a21.  The two email accounts were "interchangeable."  GX176 at 55:3 (Bonney Dep., July 30, 2014).

> 55. Prior to the merger with F&M Trust, CTC did not require PennMont to submit any invoices, bills, or other

documentation supporting its requests to transfer money from the Trusts.  GX152 at 37:14-37:20 (Bonney Dep., Aug. 9, 2009).  Upon becoming trustee, F&M Trust required PennMont to submit additional documentation along with its transfer requests.  Id. at 37:14-38:7 (Bonney Dep., Aug. 9, 2009).

56. Previously, CTC's oversight consisted of "random policy check[s]" and random invoice checks "every six months." GX176 at 68:9-68:10 (Bonney Dep., July 30, 2014).

39.     More specific instances of CTC's malfeasance and a recitation of the provisions of the Trust Agreements signed by CTC which made clear that the transfers CTC was permitting were improper are detailed in the Memorandum Opinion at ¶¶ 61-88 and are incorporated herein by reference.

Lawrence Koresko

40.     As a principal of various entities utilized to effect the Arrangement, including PennMont Benefit Services, Inc., Penn Public Trust ("PPT"), Koresko Financial, LLP and Freedom Brokers, LLP, Lawrence Koresko received substantial income from trust assets improperly paid to these entities and in the form of commissions from the insurance companies.

41.     At all relevant times, he was a fiduciary and a party-in-interest and, rather than take steps to prevent the numerous breaches of fiduciary duties, Lawrence Koresko knowingly participated in, facilitated and benefitted from the breaches.  He was aware of the improper compensation, the loans stripping out cash value, the commissions and all other violations outlined in the Memorandum Opinion.

42.     Lawrence Koresko also had direct dealings with many of the class members and affirmatively concealed the violations including the fact that cash value had been stripped out of the class members' policies.

Koresko Financial

43.     Koresko Financial was a vehicle utilized by John and Lawrence Koresko to receive commissions in violation of ERISA § 406.  As Koresko Financial's principals were the Koresko brothers, it was aware of all the violations of ERISA committed by its principals and was aware that the commissions paid to it were in violation of ERISA § 406.  Thus, it knowingly participated in these fiduciary breaches.

44.     Upon information and belief, Koresko Financial may also have received other funds that were plan assets.

Freedom Brokers

45.     Freedom Brokers was a vehicle utilized by John and Lawrence Koresko to receive commissions in violation of ERISA § 406.  As Freedom Brokers' principals were the Koresko brothers, it was aware of all the violations of ERISA committed by its principals and was aware that the commissions paid to it were in violation of ERISA § 406.  Thus, it knowingly participated in these fiduciary breaches.

46.     Upon information and belief, Freedom Brokers may also have received other funds that were plan assets.

PennMont Benefits

47.     PennMont Benefits was yet another vehicle utilized by John and Lawrence Koresko to receive commissions in violation of ERISA § 406.  As PennMont Benefits' principals were the Koresko brothers, it was aware of all the violations of ERISA

committed by its principals and was aware that the commissions paid to it were in violation of ERISA § 406.  Thus, it knowingly participated in these fiduciary breaches.

48.     Upon information and belief, PennMont Benefits may also have received other funds that were plan assets.

Lincoln National

49.     On July 8, 2010, $1.9 million dollars in assets of the Trusts were paid to Lincoln National to purchase an annuity titled to the W.S. Newell Welfare Benefit Plan, care of PennMont, and naming Daniel K. Newell as the annuitant.

50.     At that time, the W.S. Newell Welfare Benefit Plan was not an employee benefit plan that was part of the Arrangement and its assets were not held by the Trusts. It and its participants and beneficiaries are not members of the class and sub-classes on whose behalf these actions are brought.

51.     As the payment to Lincoln National came from a trust account and as Lincoln National was a fiduciary of over thirty of the employee benefit plans that were part of the Arrangement and, hence, was familiar with the documents that governed the Arrangement, it had actual or constructive knowledge that the payments it received were in breach of Koresko *et al*.'s fiduciary duties.

Locke Lord

52.     Locke Lord represented John Koresko, PennMont Benefit Services, Inc. ("PennMont"), Penn Public Trust ("PPT"), Koresko & Associates, PC ("KAPC"), Koresko Law Firm ("KLF"), and Lawrence Koresko, among others, in various litigations.

Among other litigations, Locke Lord represented John Koresko, PennMont, PPT, KAPC, KLF, Lawrence Koresko, and Koresko associates Jeanne Bonney and Larry Townsend in litigation in the Eastern District of Texas captioned as *Thomas Walter Umphrey, P.C. v. PennMont Benefit Services, Inc*., No. 1:12-cv-00355-MAC (E.D. Tx. Jul. 15, 2013). In connection with that litigation, John Koresko used $167,922.00 of the Trusts' assets to pay Locke Lord's retainer. In addition, on May 24, 2012, John Koresko transferred $50,000 of the Trusts' assets to Locke Lord by check, apparently in connection with the *Solis v. Koresko* case.

53.    This Court has ruled that the payments to Locke Lord were violative of Koresko *et al.*'s fiduciary obligations under ERISA § 406 (a) (1). Memorandum Opinion, pp 193-200 (ECF # 1134, pp. 196-203). This is the section of ERISA that prohibits self-dealing. Also see Memorandum Opinion, Appendix A (*Perez*, ECF # 1134-1), Transactions 13, 16, 47, and 60-64.

54.    In addition, the payments were violative of the provisions of the Trust documents discussed in ¶¶ 63-64 of the Memorandum Opinion, among other provisions.

55.    The two matters in which Locke Lord represented Koresko *et al*.  put Locke Lord on notice that Koresko was engaged in self-dealing and the conversion of plan assets.  In *Umphrey*, the complaint explicitly alleged that Koresko *et al*. used the Trusts' income for their own benefit (*Umphrey*, ECF # 1, ¶¶ 23-29), took cash out of insurance policies (*Id.* ¶ 30), and used the Trusts' income for lobbying expenses (*Id.* ¶¶ 31-32).

56.    *Solis* is the former designation of the *Perez* case and, obviously, the allegations in *Perez* put Locke Lord on notice of *Koresko's* misconduct.  Thus, Locke Lord was on notice that Koresko was a fiduciary of the Trusts and also on notice of the Koresko *et*

21

*al.*'s proclivities and, as the payments Locke Lord received came from accounts denominated as Trust accounts. As such, the firm had a duty of inquiry to determine if the use of the Trusts' assets to pay for Locke Lord's services was permissible. See *Consumers Produce Co. v. Volante Wholesale Produce*, 16 F.3d 1374, 1383 (3d Cir. 1994) ("[A] duty of inquiry arises when a person knows facts which under the circumstances suggest (1) that the person is dealing with a trustee and (2) that the trustee may be committing a breach of trust. If a duty of inquiry exists, and such inquiry would have disclosed the breach of trust, a person "should have known" of the breach of trust. The existence and the extent of a duty of inquiry depend on the character of the transaction and the character of the trust property.").

57.     The most superficial of inquiries would have included a review of the allegations in *Perez*, a review of the Master Trust Agreements for the REAL VEBA and the SEWPBT, a review of the prototype Plan Documents as well as a review of the record in *Perez*, including but not limited to DOL's submission in support of its motion for partial summary judgment in and the Court's order granting partial summary judgment (*Perez*, ECF ## 267, 268 and 315). Even a cursory review of any of the above described documents would have disclosed to Locke Lord that it was dealing with a fiduciary of the Trusts, and the payments it was receiving were a breach of trust and a violation of ERISA. Moreover, upon information and belief, Locke Lord attorneys reviewed the documents that governed the Arrangement, as these documents were central to both the *Umphrey* and *Solis* cases. Thus, Locke Lord had actual or constructive notice that the payments it received were in breach of Koresko *et al.*'s fiduciary duties.

58.     In addition, to the extent Locke Lord was representing the Trusts, it owed the Trusts and the Trusts' constituent employee benefit plans, plan participants and beneficiaries a fiduciary duty to avoid conflicts of interest and not to accept representations adverse to its clients' interests.  Koresko *et al.* and the Trusts had material, actual, non-waivable conflicts of interest at the time Lock Lord represented Koresko *et al.* and the Trusts.  Locke Lord breached its fiduciary obligations to the Trusts, the Trusts' constituent employee benefit plans, plan participants and beneficiaries by, among other things, undertaking representations adverse to the Trusts and accepting payment for legal work adverse to the Trusts' interests.

Anderson Kill & Olick

59.     During the time period of August 29, 2005, to May 8, 2006, the Trusts paid a total of $101,344.49 to AKO to represent John Koresko in contempt proceedings in the U.S. District Court, Eastern District of Pennsylvania with respect to the enforcement of a DOL administrative subpoena. *Chao v. Koresko*, No. 04-MC-74, 2004 WL 1102381 (E.D. Pa. May 11, 2004) *aff'd*, 04-3614, 2005 WL 2521886 (3d Cir. Oct. 12, 2005).  AKO's work involved the filing of oppositions to motions to incarcerate Mr. Koresko and taking appeals of orders that held Mr. Koresko in contempt. All this work was for the benefit of Koresko *et al*. and adverse to the interests of the Trusts and the interests of the Trusts' constituent employee benefit plans, plan participants and beneficiaries.

60.     AKO also represented Koresko et al.'s' personal interests in *REAL VEBA v. Castellano*, 2:03-cv-06903-WB, from as early as January 2004 through April 2009. On August 27, 2004, Mrs. Castellano filed a counterclaim alleging, *inter alia*, that Koresko *et*

*al*. were arbitrarily denying plan benefits so that insurance proceeds from the death of participants could be skimmed to pay themselves exorbitant administrative and legal fees. *Castellano*, ECF # 27, ¶¶ 27-28.  The counterclaim was served on AKO.

61.    Despite this allegation, AKO entered an appearance on behalf of Koresko *et al*. and defended them while still representing the REAL VEBA. *Castellano*, ECF # 36.

62.    This Court has ruled that the payments to AKO were violative of Koresko *et al*.'s fiduciary obligations under ERISA § 406 (a) (1). Memorandum Opinion, pp 193-200 (ECF # 1134, pp. 196-203). This is the section of ERISA that prohibits self-dealing. Also see Memorandum Opinion, Appendix A (*Perez*, ECF # 1134-1), Transactions 87-88.

63.    In addition, the payments were violative of the provisions of the Trust documents discussed in ¶¶ 63-64 of the Memorandum Opinion, among other provisions. These documents were attached as exhibits to the complaint filed by the REAL VEBA in *Castellano* and AKO was aware of the provisions.

64.    AKO also represented Koresko *et al*. in other cases in which similar allegations to those made in *Castellano* were asserted by others.  These cases include, *inter alia*, *REAL VEBA v. Sidney Charles Markets, Inc.*, E.D. Pa, 2:01-cv-04693.

65.    Thus AKO was on notice that in dealing with Koresko, it was dealing with a fiduciary of the Trusts, and also on notice of Koresko *et al*.'s proclivities. Moreover, as the payments AKO received came from accounts denominated as Trust accounts, it had a duty of inquiry to determine if the use of the Trusts' assets to pay for AKO's services was permissible. See *Consumers Produce Co. v. Volante Wholesale Produce*, 16 F.3d 1374, 1383 (3d Cir. 1994) ("[A] duty of inquiry arises when a person knows facts which under the circumstances suggest (1) that the person is dealing with a trustee and (2) that the

trustee may be committing a breach of trust. If a duty of inquiry exists, and such inquiry would have disclosed the breach of trust, a person "should have known" of the breach of trust. The existence and the extent of a duty of inquiry depend on the character of the transaction and the character of the trust property.").

66.     The most superficial of inquiries would have included a review, a review of the Master Trust Agreements for the REAL VEBA and the SEWPBT, and a review of the prototype Plan Documents. Even a cursory review of any of the above described documents would have disclosed to AKO that the payments it was receiving were a breach of trust and a violation of ERISA. Thus, AKO had actual or constructive notice that the payments it received were in breach of Koresko *et al.*'s fiduciary duties.

67.     In addition, to the extent AKO was representing the Trusts, it owed the Trusts and the Trusts' constituent employee benefit plans, plan participants and beneficiaries a fiduciary duty to avoid conflicts of interest and not to accept representations adverse to its clients' interests.  Koresko *et al.* and the Trusts had material, actual, non-waivable conflicts of interest at the time AKO represented Koresko *et al.* and the Trusts.  AKO breached its fiduciary obligations to the Trusts, the Trusts' constituent employee benefit plans, plan participants and beneficiaries by, among other things, undertaking representations adverse to the Trusts and accepting payment for legal work adverse to the Trusts' interests.

Caplin & Drysdale

68.     During the time period of March 14, 2008 to April 3, 2009, the Trusts paid a total of $107,651.90 to C&D. C&D is a Washington, D.C.-based law firm, which was engaged by John Koresko to, among other things, handle tax cases and prepare tax petitions.

69.     In these petitions, C&D asserted positions, including with regard to the conversion of assets between and among the Trusts, which were adverse to the best interests of the beneficiaries of the Trusts, including members of the Plaintiff class.

70.     As the payments to C & D came directly from CTC accounts in the name of the Trusts and as C&D had direct familiarity with all of the documents relative to the Arrangement in order to handle the tax cases and prepare the aforementioned Petitions, it had actual or constructive notice that the payments it received were in breach of Koresko *et al.*'s fiduciary duties.

71.     In addition, to the extent C&D was representing the Trusts, it owed the Trusts and the Trusts' constituent employee benefit plans, plan participants and beneficiaries a fiduciary duty to avoid conflicts of interest and not to accept representations adverse to its clients' interests.  Koresko *et al.* and the Trusts (and its constituent employee benefit plans, plan participants and beneficiaries) had material, actual, non-waivable conflicts of interest at the time C&D performed its work.  C&D breached its fiduciary obligations to the Trusts, the Trusts' constituent employee benefit plans, plan participants and beneficiaries by, among other things, undertaking representations adverse to them and accepting payment for legal work adverse to their interests.

Samuels, Yoelin Kantor, LLP

72.     SYK is a law firm based out of Portland, Oregon. The firm entered an appearance on behalf of Koresko *et al.*, including PennMont, PPT, KLF, John Koresko, and Lawrence Koresko, in the case of *Bogatay Trust of 2000 v. PennMont Benefit Services, Inc.*, No. 13-cv-0700 (D. Ore.). As of January 7, 2014, John Koresko believed that SYK was current counsel for trust-related matters and indemnity-related matters involving

litigation. In the *Bogatay Trust of 2000* matter, filed in April, 2013, Mr. Bogatay claimed

that the defendants refused to transfer the "cash value life insurance policy" that Mr.

Bogatay had "purchased and funded through a trust arrangement with the Koresko

Defendants."

73.     The complaint in *Bogatay* contained numerous allegations that Koresko *et al*.

were defrauding the Trusts. *Bogatay*, ECF 1, ¶¶ 22-27.  It also put the SYK on notice of

the *Perez* case. (*Id.* ¶ 28).

74.     This Court has ruled that the payments to SYK were violative of Koresko *et al*.'s

fiduciary obligations under ERISA § 406 (a) (1). Memorandum Opinion, pp 193-200

(ECF # 1134, pp. 196-203). This is the section of ERISA that prohibits self-dealing. Also

see Memorandum Opinion, Appendix A (*Perez*, ECF # 1134-1), Transactions 15 and 17.

75.     In addition, the payments were violative of the provisions of the Trust documents

discussed in ¶¶ 63-64 of the Memorandum Opinion among other provisions.

76.     The allegations in *Bogatay* and its reference to *Perez* put SYK on notice that

Koresko *et al*. were engaged in self-dealing and the conversion of plan assets.  Thus SYK

was on notice that in dealing with Koresko it was dealing with a fiduciary of the Trusts,

and also on notice of the Koresko *et al*. proclivities. Moreover, as the payments SYK

received came from accounts denominated as Trust accounts, it had a duty of inquiry to

determine if the use of Trust assets to pay for SYK's services was permissible. *See*

*Consumers Produce Co. v. Volante Wholesale Produce*, 16 F.3d 1374, 1383 (3d Cir.

1994) ("[A] duty of inquiry arises when a person knows facts which under the

circumstances suggest (1) that the person is dealing with a trustee and (2) that the trustee

may be committing a breach of trust. If a duty of inquiry exists, and such inquiry would

have disclosed the breach of trust, a person "should have known" of the breach of trust. The existence and the extent of a duty of inquiry depend on the character of the transaction and the character of the trust property.").

77.     The most superficial of inquiries would have included a review of the allegations in *Perez*, a review of the Master Trust Agreements for the REAL VEBA and the SEWPBT, a review of the prototype Plan Documents as well as a review of the record in *Perez*, including but not limited to DOL's submissions in support of its motion for partial summary judgment in and the Court's order granting partial summary judgment (*Perez*, ECF ## 267, 268 and 315). Even a cursory review of any of the above described documents would have disclosed to SYK that the payments it was receiving were a breach of trust and a violation of ERISA. Thus, SYK had actual or constructive notice that the payments it received were in breach of Koresko *et al.*'s fiduciary duties.

78.     In addition, to the extent SYK was representing the Trusts, it owed the Trusts and the Trusts' constituent employee benefit plans, plan participants and beneficiaries a fiduciary duty to avoid conflicts of interest and not to accept representations adverse to its clients' interests.  Koresko *et al.* and the Trusts had material, actual, non-waivable conflicts of interest at the time SYK represented Koresko *et al.* and the Trusts.  SYK breached its fiduciary obligations to the Trusts, the Trusts' constituent employee benefit plans, plan participants and beneficiaries by, among other things, undertaking representations adverse to the Trusts and accepting payment for legal work adverse to the Trusts' interests.

Jeffrey Neiman

79.     Mr. Neiman represents John Koresko in the Eastern District of Pennsylvania relating to a tax penalty that was assessed against John Koresko personally and against PennMont. Mr. Koresko paid Mr. Neiman out of an account titled to Penn Public Trust, 419 account. Between February 24, 2010 and June 28, 2013, John Koresko transferred $165,800 from this account to Neiman.

80.     As the payments to Neiman came from accounts denominated as trust accounts and as the case Neiman handled required him to familiarize himself with the documents that governed the Arrangement, Neiman had actual or constructive notice that the payments he received were in breach of Koresko *et al*.'s fiduciary duties.


Gates Halbruner & Hatch ("GHH")

81.     During the time period of March 20, 2009 to April 3, 2009, the Trusts paid a total of $41,590.76 to GHH. GHH was retained by CTC in response to the DOL's subpoenaing Jefferson Government Relations ("JGR"), which occurred after the Third Circuit issued its decision in *Chao v. Cmty. Trust Co*., 474 F.3d 75 (3d Cir. 2007), as amended (Mar. 7, 2007), and *Chao* returned to this Court. GHH's invoices record billing time for preparation of a brief in opposition to the DOL's petition to enforce a subpoena against CTC and billing with respect to JGR, including telephone calls with JGR's attorney, reviewing and revising JGR's motion to quash, and reviewing emails from KLF.

82.     This Court has ruled that the payments to GHH were violative of Koresko *et al*.'s fiduciary obligations under ERISA § 406 (a) (1). Memorandum Opinion, pp 193-200

(ECF # 1134, pp. 196-203). This is the section of ERISA that prohibits self-dealing. Also see Memorandum Opinion, Appendix A (*Perez*, ECF # 1134-1), Transactions 97-100.

83.     In addition, the payments were violative of the provisions of the Trust documents discussed in ¶¶ 63-64 of the Memorandum Opinion among other provisions.

84.     The named partner of GHH, Lowell Gates, was, at all relevant times, chairman of the board of CTC and he was a signatory to the Master Trust Agreement governing the Trusts. Memorandum Opinion, ¶ 11-12. Moreover, CTC was approving numerous transfers out of the Trusts' accounts that have been deemed wrongful by this Court. Thus, through Mr. Gates, GHH was aware of the fact that Koresko *et al*. were converting plan assets.  Memorandum Opinion (¶¶ 53-88).

85.      As the payments to GHH came from accounts denominated as trust accounts and as Lowell Gates knew or should have known these payments violated the terms of the Trusts, GHH had a duty of inquiry to determine if the use of Trust assets to pay for GHH's services was permissible. *See Consumers Produce Co. v. Volante Wholesale Produce*, 16 F.3d 1374, 1383 (3d Cir. 1994) ("[A] duty of inquiry arises when a person knows facts which under the circumstances suggest (1) that the person is dealing with a trustee and (2) that the trustee may be committing a breach of trust. If a duty of inquiry exists, and such inquiry would have disclosed the breach of trust, a person "should have known" of the breach of trust. The existence and the extent of a duty of inquiry depend on the character of the transaction and the character of the trust property.").

86.     The most superficial of inquiries would have disclosed to GHH that the payments it was receiving were a breach of trust and a violation of ERISA and any legal work in *Chao* would have required GHH attorneys to familiarize themselves with the documents

that contain the provisions this Court has ruled were violated by the payments to GHH.

Thus, GHH had actual or constructive notice that the payments it received were in breach

of Koresko et al.'s fiduciary duties.

Christie Parabue Moreten & Young

87.      CPMY is a Philadelphia-based law firm and is listed as co-counsel along with Mr.

Koresko in the case of *Single Employer Welfare Benefit Plan Trust v. Connelly*, No. 11-

5276 (E.D. Pa., Nov. 11, 2011). In that case, Mr. Koresko filed for an emergency

injunction in the Montgomery County Court of Common Pleas, seeking to enjoin Claire

M. Connelly, an administrator with the American Arbitration Association, from issuing

any decision with respect to an arbitration case initiated by beneficiaries of an employee

benefit plan that participated in the Arrangement (See *Langlais v. PennMont Benefit

Services*, No. 11-5275, 2012 WL 2849414, at *1 (E.D. Pa. July 11, 2012), *aff'd*, 527 F.

App'x 215 (3d Cir. 2013). PennMont, REAL VEBA, and Mr. Koresko were the named

defendants in *Langlais*. Id. (Docket No. 1-2). CPMY was paid at least $250,000.00 by

Koresko *et al.*, and the payment(s) came from the Trusts' assets.

88.      This Court has ruled that the payments to CPMY were violative of Koresko *et

al.*'s fiduciary obligations under ERISA § 406 (a) (1). Memorandum Opinion, pp 193-

200 (ECF # 1134, pp. 196-203). This is the section of ERISA that prohibits self-dealing.

89.      In addition, the payments were violative of the provisions of the Trust documents

discussed in ¶¶ 63-64 of the Memorandum Opinion among other provisions.

90.      The filings in the *Langlais* arbitration are replete with allegations and

documentation of Koresko *et al*.'s conversion of the Trusts' assets. As the payments to

CPMY came from an account denominated as an IOLTA account, i.e. an attorney's account holding client funds, and as any involvement in *Langlais* would have put CPMY on notice that it was dealing with a fiduciary and that the fiduciary was likely engaged in a breach of trust, CPMY had a duty of inquiry to determine if the use of the Trusts' assets to pay for CPMY's services was permissible. *See Consumers Produce Co. v. Volante Wholesale Produce*, 16 F.3d 1374, 1383 (3d Cir. 1994) ("[A] duty of inquiry arises when a person knows facts which under the circumstances suggest (1) that the person is dealing with a trustee and (2) that the trustee may be committing a breach of trust. If a duty of inquiry exists, and such inquiry would have disclosed the breach of trust, a person "should have known" of the breach of trust. The existence and the extent of a duty of inquiry depend on the character of the transaction and the character of the trust property.").

91.     The most superficial of inquiries would have included a review of the allegations in *Perez*, a review of the Master Trust Agreements for the REAL VEBA and the SEWPBT, and a review of the prototype Plan Documents. Even a cursory review of any of the above described documents would have disclosed to CPMY that the payments it was receiving were a breach of trust and a violation of ERISA. Thus, CPMY had actual or constructive notice that the payments it received were in breach of Koresko *et al*.'s fiduciary duties.


Law Offices of Scott Alan Orth, P.A.

92.     Mr. Orth received $5,000 from the Trusts' accounts on September 14, 2010 (Memorandum Opinion, ¶ 186.) In addition, Defendant Neiman was instructed by Mr.

Koresko to transfer $50,000 of the Trusts' assets Neiman had received (¶ 79 above) to

Mr. Orth.  Mr. Neiman complied with this request.

93.     These funds were paid to Mr. Orth for representing Lawrence Koresko and

PennMont Benefit Services, Inc.

94.     The Court has determined that the payments to Mr. Orth violated ERISA and

provisions of the Trust documents. See Memorandum Opinion, Appendix A, (*Perez*, ECF

# 1134-1) Transactions 48, 49, and 85.

95.     In addition, Mr. Orth knowingly violated an order of this Court and knowingly

aided and abetted Mr. Koresko's contempt of this Court by purporting to represent the

Trusts in bankruptcy proceedings at the direction of Mr. Koresko after Mr. Koresko had

been stripped of any authority over the Trusts. See Memorandum Opinion, pp. 18-19, fn.

16 and Orth's appearances in e.g. In Re: REAL VEBA Trust, M.D. Fl., 3:13-bk-05987-

JAF, ECF # 2.

96.     Upon information and belief, the cases Mr. Orth was involved in contained

allegations of misconduct by Koresko et al.'s implicating breaches of fiduciary duty and

Mr. Orth was aware of the allegations in *Perez* at the time he received payment from the

Trusts. In addition, at the time he received the $50,000 through Mr. Neiman, Mr. Orth

knew the funds were from the Trusts' assets and that he was being paid to perform

services that would not benefit the Trusts.

97.     Orth was on notice that he was dealing with a fiduciary and that the fiduciary was

likely engaged in a breach of trust and Orth had a duty of inquiry to determine if the use

of Trust assets to pay for his services was permissible. *See Consumers Produce Co. v.

Volante Wholesale Produce*, 16 F.3d 1374, 1383 (3d Cir. 1994) ("[A] duty of inquiry

arises when a person knows facts which under the circumstances suggest (1) that the person is dealing with a trustee and (2) that the trustee may be committing a breach of trust. If a duty of inquiry exists, and such inquiry would have disclosed the breach of trust, a person "should have known" of the breach of trust. The existence and the extent of a duty of inquiry depend on the character of the transaction and the character of the trust property.").

98.     The most superficial of inquiries would have included a review of the allegations in *Perez*, a review of the Master Trust Agreements for the REAL VEBA and the SEWPBT, and a review of the prototype Plan Documents. Even a cursory review of any of the above described documents would have disclosed to Orth that the payments he was receiving were a breach of trust and a violation of ERISA. Thus, Orth had actual or constructive notice that the payments he received were in breach of Koresko *et al.*'s fiduciary duties.

### Count I – ERISA, 29 U.S.C. § 1132(a)(2)

### Plaintiffs on Behalf of the Class of Employee Benefit Plans Covered by ERISA vs. the Co-Fiduciary Defendants

99.     Plaintiffs incorporate paragraphs 1-98, above, as if fully set forth herein.

100.    The Co-Fiduciary Defendants:

> a.  Knowingly participated in and facilitated their co-fiduciaries' misconduct, including their co-fiduciaries' violations of ERISA §§ 404 and 406;
>
> b.  Failed to take reasonable steps to prevent or remedy the fiduciary breaches of their co-fiduciaries in violation of ERISA § 405;

    c.   Failed to perform their fiduciary duties in accord with the prudent man standard of care set forth in ERISA § 404; and

    d.   Engaged in other activity which violated ERISA, was not in accord with provisions of the employee benefit plan documents and was contrary to the best interests of the participants and the beneficiaries of the employee benefit plans.

**WHEREFORE**, plaintiffs request that judgment be entered in their favor and in favor of the classes they seek to represent on behalf of the Trusts and on behalf of the ERISA employee benefit plans whose assets were held by the Trusts and against the Co-Fiduciary Defendants.  Plaintiffs further request that:

    1.   The Co-Fiduciary Defendants be held personally liable to make good to the employee benefit plans any losses to the plans resulting from each breach of their own and their co-fiduciaries' responsibilities, obligations, or duties and to restore to the plans any profits which have been made through use of assets of the plans by the Co-Fiduciary Defendants or their co-fiduciaries;

    2.   Certification of the Plaintiff Class and Sub-classes;

    3.   Plaintiffs be awarded attorney's fees and costs;  and

    4.   The Court order such other equitable or remedial relief as it deems appropriate.

**Count II – Common Law Breach of Fiduciary Duties**

**Plaintiffs on Behalf of the Class of Employee Benefit Plans Not Covered by ERISA**

**vs. the Co-Fiduciary Defendants**

101.    Plaintiffs incorporate paragraphs 1-100, above, as if fully set forth herein.

102.    The Co-Fiduciary Defendants:

      a.    Knowingly participated in and facilitated their co-fiduciaries' misconduct;

      b.    Failed to take reasonable steps to prevent or remedy the fiduciary breaches of their co-fiduciaries;

      c.    Failed to perform their fiduciary duties in accord with a reasonable standard of care; and

      d.    Engaged in other activity which was not in accord with provisions of the employee benefit plan documents and was contrary to the best interests of the participants and the beneficiaries of the employee benefit plans.

**WHEREFORE**, plaintiffs request that judgment be entered in their favor and in favor of the classes they seek to represent on behalf of the Trusts and on behalf of the non-ERISA employee benefit plans whose assets were held by the Trusts and against the Co-Fiduciary Defendants.  Plaintiffs further request that:

    1.    The Co-Fiduciary Defendants be held personally liable to make good to the employee benefit plans any losses to the plans resulting from each breach of their own and their co-fiduciaries' responsibilities, obligations, or duties and to restore to the plans any profits which have been made through use of assets of the plans by the Co-Fiduciary Defendants or their co-fiduciaries;

2.   Certification of the Plaintiff Class and Sub-classes;

3.   Plaintiffs be awarded attorney's fees and costs;  and and

4.   The Court order such other equitable or remedial relief as it deems appropriate.

**Count III – ERISA, 29 U.S.C. § 1132(a)(3)**

**Plaintiffs on Behalf of the Class of Employee Benefit Plans Covered by**

**ERISA vs. the Recipient Defendants**

103.   Plaintiffs incorporate paragraphs 1-102, above, as if fully set forth herein.

104.   The fees paid out of the Trusts' assets to Recipient Defendants were paid in breach of Koresko *et al.*'s fiduciary duties to the ERISA plans whose assets were held by the Trusts.  The payments were also prohibited transactions under ERISA, prohibited acts of self-dealing, and violative of the terms of the employee benefit plans whose assets were held by the Trusts.

105.   The Recipient Defendants had actual or constructive notice that the payments they received violated both ERISA and the terms of the employee benefit plans whose assets were held by the Trusts.

106.   Plaintiffs, on behalf of the Trusts and on behalf of the ERISA employee benefit plans whose assets were held by the Trusts, have standing to assert a cause of action for restitution of the fees to the Trusts or for disgorgement of the fees and disgorgement of any profits derived therefrom. *Harris Trust & Sav. Bank v. Salomon Smith Barney, Inc.*, 530 U.S. 238, 250 (2000).

**WHEREFORE**, plaintiffs request that judgment be entered in their favor and in favor of the classes they seek to represent on behalf of the Trusts and on behalf of the

ERISA employee benefit plans whose assets were held by the Trusts and against the Recipient Defendants.  Plaintiffs further request that:

1. The Recipient Defendants be ordered to account for and disgorge to the Trusts:

    a.    All fees paid to them by the Trusts or out of the Trusts' assets; and

    b.    Any profits derived from the fees.

2. The Trusts' be awarded pre-judgment interest;

3. Certification of the Plaintiff Class and Sub-classes;

4. Plaintiffs be awarded attorney's fees and costs;  and

5. The Court order such other equitable relief as it deems appropriate.


**Count IV – Common Law Aiding and Abetting and Knowingly Participating in a Fiduciary's Breach, and Liability of Transferee with Notice of Breach of Trust Plaintiffs on behalf The Class of Employee Benefit Plans Not Covered by ERISA vs. the Recipient Defendants**


107.    Plaintiffs incorporate paragraphs 1-106, above, as if fully set forth herein.

108.    The fees paid out of the Trusts' assets to Recipient Defendants were paid in breach of Koresko *et al*.'s fiduciary duties to the non-ERISA plans whose assets were held by the Trusts.  The payments were also acts of self-dealing and violative of the terms of the non-ERISA employee benefit plans whose assets were held by the Trusts.

109.    The Recipient Defendants had actual or constructive notice that the payments they received violated both Koresko *et al*.'s fiduciary duties and the terms of the non-ERISA employee benefit plans whose assets were held by the Trusts.

110.    As aider and bettors, knowing participants and transferees with actual or constructive knowledge of Koresko et al.'s breach of trust, the Recipient Defendants are liable.

111.    Plaintiffs, on behalf of the Trusts and any non-ERISA plans whose assets were held by the Trusts, seek restitution of the fees paid to the Recipient Defendants or disgorgement of the fees and disgorgement of the Recipient Defendants' profits derived therefrom. *Restatement (Second) of Trusts* §§ 284, 291, 294, 295, 297 (1959).

**WHEREFORE**, plaintiffs request that judgment be entered in their favor and in favor of the classes they seek to represent on behalf of the Trusts and on behalf of the non-ERISA employee benefit plans whose assets were held by the Trusts and against the Recipient Defendants.  Plaintiffs further request that:

1.    The Recipient Defendants be ordered to account for and disgorge to the Trusts:

   a.    All fees paid to them by the Trusts or out of the Trusts' assets; and

   b.    Any profits derived from the fees.

2.    Certification of the Plaintiff Class and Sub-classes;

3.    The Trusts' be awarded pre-judgment interest;

4.    Plaintiffs be awarded attorney's fees and costs; and

5.    The Court order such other equitable relief as it deems appropriate.

## Count V - ERISA, 29 U.S.C. § 1132(a)(3)

## Plaintiffs on Behalf of the Class of Employee Benefit Plans Covered by

## ERISA vs. the Commission Recipient Defendants

112.    Plaintiffs incorporate paragraphs 1-112, above, as if fully set forth herein.

113.    The commissions paid to the Commission Recipient Defendants were paid for the personal benefit of John Koresko and other fiduciaries or for the benefit of entities owned and controlled by John Koresko.  As such, the commissions violated ERISA § 406.

114.    The Commission Recipient Defendants were either fiduciaries themselves or knowingly participated in and facilitated these violations of ERISA § 406.

115.    Plaintiffs, on behalf of the Trusts and on behalf of the ERISA employee benefit plans whose assets were held by the Trusts, have standing to assert a cause of action for disgorgement of the commissions.

**WHEREFORE**, plaintiffs request that judgment be entered in their favor and in favor of the classes they seek to represent on behalf of the Trusts and on behalf of the ERISA employee benefit plans whose assets were held by the Trusts and against the Commission Recipient Defendants.  Plaintiffs further request that:

1.  The Commission Recipient Defendants be ordered to account for and disgorge to the Trusts:

    a.      All commissions paid to them or entities they owned or controlled in connection with the sale of insurance policies to the Trusts; and

    b.      Any profits derived from said commissions.

2.  Certification of the Plaintiff Class and Sub-classes;

3.  Plaintiffs be awarded attorney's fees and costs;  and

4.  The Court order such other equitable relief as it deems appropriate.

### Count VI – Common Law Breach of Fiduciary Duty and Knowing Participation in a Fiduciary's Breach

### Plaintiffs on Behalf of the Class of Employee Benefit Plans Not Covered by ERISA vs. the Commission Recipient Defendants

116.   Plaintiffs incorporate paragraphs 1-115, above, as if fully set forth herein.

117.   The commissions paid to the Commission Recipient Defendants were paid for the personal benefit of John Koresko and other fiduciaries or for the benefit of entities owned and controlled by John Koresko.  As such, acceptance of the commissions breached the fiduciary duties John Koresko owed to non-ERISA employee benefit plans.

118.   The Commission Recipient Defendants were either fiduciaries themselves or knowingly participated in, facilitated and benefited from these breaches.

**WHEREFORE**, plaintiffs request that judgment be entered in their favor and in favor of the classes they seek to represent on behalf of the Trusts and on behalf of the non- ERISA employee benefit plans whose assets were held by the Trusts and against the Commission Recipient Defendants.  Plaintiffs further request that:

1.  The Commission Recipient Defendants be ordered to account for and disgorge to the Trusts:

a.      All commissions paid to them or entities they owned or controlled

in connection with the sale of insurance policies to the Trusts; and

b.      Any profits derived from said commissions.

Certification of the Plaintiff Class and Sub-classes;

2.  Plaintiffs be awarded attorney's fees and costs; and

3.  The Court order such other equitable relief as it deems appropriate.


**<u>Count VII – Common Law Breach of Fiduciary Duty and Malpractice</u>**

**<u>Plaintiffs vs. the Attorney Defendants Who Represented the Trusts</u>**

119.    Plaintiffs incorporate paragraphs 1-118, above, as if fully set forth herein.

120.    The Attorney Defendants Who Represented the Trusts owed their clients – the REAL VEBA Trust and the SEWBPT as well as the beneficiaries of the Trusts – the fiduciary duties all attorneys owe their clients to avoid conflicts of interest and not to accept representations directly adverse to their clients' interests.

121.    The conflicts of interest between Koresko *et al*. and the Trusts were direct, material and non-waivable.

122.    Even if waivable, any waiver provided by Koresko *et al*. on behalf of the Trusts was void *ab initio* and of no effect.

123.    The Attorney Defendants Who Represented the Trusts breached their fiduciary obligations to the Trusts and failed to meet basic standards of professional care by:

a.      Agreeing to simultaneously represent the Trusts (and/or its constituent employee benefit plans, plan participants, and beneficiaries) and Koresko *et al*.;

b.      Advocating positions on behalf of Koresko *et al*. that were directly adverse to the interests of the Trusts (and/or its constituent employee benefit plans, plan participants, and beneficiaries);

c.      Failing to insist that the Trusts retain independent counsel and appoint an independent trustee *ad-litem* to handle all matters in which the Trusts' interests were adverse to those of Koresko *et al*.

d.      Accepting payment from the Trusts for legal work against its (and/or its constituent employee benefit plans', plan participants', and beneficiaries') interests.

**WHEREFORE**, plaintiffs request that judgment be entered in their favor on behalf of the Trusts and on behalf of the classes plaintiffs propose to represent and against The Attorney Defendants Who Represented the Trusts.  Plaintiffs further request that:

1.      The Attorney Defendants be ordered to account for and disgorge to the Trusts:

a.      All fees paid to them by the Trusts or out of the Trusts' assets; and

b.      Any profits derived from the fees.

2.   Certification of the Plaintiff Class and Sub-classes;

3.   The Trusts' be awarded pre-judgment interest; and

4.      Plaintiffs be awarded compensatory damages, punitive damages,

attorney's fees and costs.


Respectfully submitted,

                              /s/ Ira B. Silverstein
                              By: Ira B. Silverstein
                              The Silverstein Firm
                              1515 Market Street, Ste. 1200
                              Philadelphia, PA 19102
                              Direct: (267) 457-2273
                              Email: irasilverstein@tsfllc.net

                              David Lefkowitz
                              Wilshire Palisades Law Group, P.C.
                              1337 Ocean Avenue, Suite A
                              Santa Monica, CA   90401
                              Direct: (310)393-4929
                              Email: dl@wplawgroup.com

                              Attorneys for Plaintiffs

         December 30, 2015