**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| HARVEY KALAN, M.D., *et al.* individually and on behalf of all others similarly situated, <br><br> Plaintiffs, <br><br> vs. <br><br> FARMERS & MERCHANTS TRUST CO., *et al.* <br><br> Defendants. | **C.A. No.:  2:15-CV-01435-WB** <br><br> **CLASS ACTION** |

**DECLARATION OF IRA SILVERSTEIN IN SUPPORT OF PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT WITH FARMERS & MERCHANTS TRUST COMPANY OF CHAMBERSBURG AS SUCCESSOR BY MERGER TO COMMUNITY TRUST COMPANY, PLAN OF ALLOCATION OF SETTLEMENT PROCEEDS, AND AWARD OF ATTORNEYS' FEES AND REIMBURSEMENT OF EXPENSES**

I, Ira B. Silverstein, declare as follows:

**Introduction and Qualifications**

1.  I am a licensed attorney in the Commonwealth of Pennsylvania and was admitted to the bar of this Honorable Court in 1973. I am currently the principal of The Silverstein Firm, LLC ("TSF"). I am co-lead counsel for the named plaintiffs in the above captioned matter and submit this declaration in support of the contemporaneously filed Plaintiffs' Motion for Final Approval of Class Action Settlement, Plan of Allocation of Settlement Proceeds, and Award of Attorneys' Fees and Reimbursement of Expenses.

2.  I have personal knowledge of the facts in this declaration, and if called upon to do so, I could and would competently testify thereto.

3.  I have practiced in the area of complex litigation for over 40 years in a number of contexts and have extensive experience in ERISA and internal fraud litigation.

4.  I obtained my J.D. from Harvard Law School in 1973. Prior to that I obtained an M.A. in political science from U.C. Berkeley (1970) and a B.A. with honors from Yale University (1969).

5.  Upon graduation from law school I worked as an attorney at Community Legal Services in Philadelphia from 1973 to 1976.  During that time, I prosecuted two successful class actions in this Honorable Court on behalf of indigent clients. The first resulted in a consent decree changing the procedures for replacing lost or stolen welfare checks. The second modified PGW's then practice of basing employment decisions on arrest records.

6.  From 1976 to 1989, I practiced as a union-side labor lawyer, first at Meranze, Katz, Spear & Wilderman and then at Spear Wilderman. I became a partner at the first firm and was a founding partner and managing partner of the second firm.

7.  During my 13 years as a union-side labor lawyer, I represented numerous Taft-Hartley benefit plans which, after 1974, were subject to ERISA. As a consequence, my practice became increasingly focused on compliance with ERISA and ERISA related litigation.

8.  From 1989 through 1999 I was a partner at Fox Rothschild. During that time my practice focused both on ERISA and insider misconduct. I was lead counsel in the seminal ERISA case, *Glaziers & Glassworkers Union Local No. 252 Annuity Fund v. Newbridge Sec.*, 93 F.3rd 1171 (3rd Cir. 1996), which I successfully argued before the Third Circuit. The case resulted in a substantial recovery from third-parties for an employee benefit plan defrauded by its investment advisor.

9. Also, while at Fox Rothschild, I was lead counsel for the Insurance Commissioner of the Commonwealth of Pennsylvania in her capacity as Liquidator of two insolvent life insurance companies. In that role and in various forums, I successfully recovered virtually all of the funds embezzled by insiders (some $70 million).  See, for example, *Kaiser et al. v. Stewart, et al.*, E.D.Pa., 2:96-cv-06643-HB.

10. I have also been lead counsel for defendants in class actions, including ERISA class actions, and lead counsel for a group of over 50 retirees seeking health benefits in which a substantial settlement was obtained. *Ament et al. v. Bowe Bell + Howell Company*, N.D. Il., 1:06-cv-02856.

11. More recently, I have been appointed by Judge Bernstein of the Philadelphia Court of Common Pleas as Class Special Co-Master to oversee, hold, disburse and administer the distribution fund of over $240,000,000 in the Wal-Mart Stores wage class actions pending in that state court. *Braun v. Wal-Mart* and *Hummel v. Wal-Mart*, Phila. C.P. March Term 2002, No. 3127 and August Term 2004, No. 3757. In addition, I am lead counsel for a group of plaintiffs in two state-law retirement plan related cases pending in Florida.  *Jose Rodriguez, et al., v. City Of Miami, City Of Miami General Employees' And Sanitation Employees' Retirement Trust, et al.*, Case No. 14-7997 CA 01 (22), and *Lieutenant Jorge Castro et al., v. City Of Miami Firefighters' and Police Officers' Retirement Trust & Plan, and The Board Of Trustees Of The City Of Miami Firefighters' and Police Officers' Retirement Trust, et al.*, Case No. 14-7987 CA 01 (22).

12. Since 2003, I have been continuously involved in litigation related to the REAL VEBA and the SEWBPT, successfully obtaining death benefits for two sets of beneficiaries. *REAL VEBA v. Castellano*, E.D. Pa., 2:03-cv-06903-WB and *Langlais et al. v. PennMont Benefit*

*Services, Inc. et al.*, E.D. Pa., 2:11-cv-05275-WB. I have also successfully prosecuted a REAL VEBA related class action on behalf of the same class proposed in the instant case. *Kalan et al, v. Montgomery McCracken,* E.D. Pa., 2:14-cv-06985-WB

13. I currently represent 25 plans, their sponsors, or their participants either in REAL VEBA litigation pending before this Court or with respect to their interests in *Acosta v. Koresko et al.*, E.D.Pa., 2:09-cv-0988-WB. All of these clients are within the proposed settlement class. Because of these representations, I have often acted as a *de facto* representative of the class members' interests during the course of the *Acosta* litigation. Numerous attorneys for class members as well as unrepresented class members have regularly turned to me for updates and consultations concerning issues surrounding the Koresko Arrangement and the impact of the *Acosta* case on their interests.

14. Particularly through the *Castellano* case, I think it is fair to say that I was the primary moving force in leading the Department of Labor to uncover, prosecute and bring a stop to the massive fraud the Koresko Parties were engaged in. Over the course of 12 years of litigation, I have extensively investigated the facts and law surrounding the REAL VEBA scam and, more recently, have extensively researched the facts and law surrounding the claims asserted in the above captioned case.  This investigation has included extensive review of documents obtained from clients, from discovery, through diligent monitoring of *Acostaz*, and through personal investigation and research.

15. Mr. Lefkowitz and I have knowledge of the substantive and procedural law applicable to this case and we have the ability and willingness to commit significant resources toward its prosecution.

**Negotiation of the Proposed Settlements**

16. I was personally involved in negotiating the proposed settlement with F&M, currently before the Court for approval. Negotiations were preceded by two motions to dismiss and substantial document discovery.

17.  The negotiations were arms-length and the Settlement Agreement attached hereto as Exhibit A was and is the only agreement between the parties other than the collateral agreement attached as Exhibit B.

18. The proposed settlement is the result of two separate mediations, a full day mediation before former Magistrate Judge Diane Welsh, and a full day mediation (plus partial days of telephonic sessions) before former Magistrate Judge John Hughes who was appointed by this Honorable Court.

**Class counsel's evaluation of the settlement**

19. Based on co-counsel's and my evaluation, I believe the settlement is an excellent result for the class. Since the proposed settlement calls for a payment of $10,000,000 as compared to the $175,000 consent judgment negotiated by the Department of Labor with the same defendant, the adequacy of the proposed settlement is manifest.

20. Though plaintiffs' counsel believe their case is strong, continued litigation will be lengthy and expensive and not without significant risks.  Key legal issues remain unresolved, e.g., (i) the applicable statutes of limitations, (ii) the date the claims accrued for limitations purposes, (iii) whether F&M was a directed trustee, and (iv) the impact of the January 15, 2010 order in *Acosta* removing F&M as trustee, awarding F&M its fees, and transferring the Trusts' assets to the Koresko Parties. If any of these issues are resolved adversely to

plaintiffs either in the Court's ruling on the pending motions to dismiss or later in the case, settlement value will be substantially impacted.  And, even if they are all resolved in plaintiffs' favor, given the significance of the legal issues, trial will likely be followed by appeals that will not only add to the cost and duration of the litigation but which will endanger the value of any favorable judgment that had been obtained.

21. As established in *Acosta* and in the motions to approve prior partial settlements in the instant case, the proposed settlement class covers over 200 participating plans and over 500 participants. Joining all such plans and participants in a single suit is impracticable.

22. It is also highly unlikely there will be any objections to the proposed settlement.  This will be the eighth settlement Mr. Lefkowitz and I have negotiated for the proposed class. In none of the prior settlements were there any objections filed and the instant settlement is for a sum far in excess of any of the prior settlements. In the one prior settlement that involved a non-mandatory class, there were no opt-outs.


**Class Notice and Responses**

23. After the Settlement Agreement was finalized and the Court gave preliminary approval to the settlement, and to a proposed form and method of class notice, notice was sent utilizing the class contact information obtained from The Wagner Law Group ("WLG") in the *Montgomery McCracken* case. TSF handled sending out the required notice. A copy of the form of notice sent is attached hereto as Exhibit C.

24. On May 14, 2018, TSF sent out 249 emails using the email addresses provided by WLG and, on May 16, 2018, TSF mailed notices to 572 additional plans and participants using the addresses provided by WLG for employers for whom no email address was known.

Virtually all of the mailed notices sent out on May 16, 2018 were to inactive or terminated plans. Though some have been returned as undeliverable, no active plans' notices have been returned as undeliverable,

25. As of the date of this declaration, we have not received any objections to the proposed settlement or the proposed common fund attorney's fees from any class members and the case docket does not reveal any filed objections. I have received a number of phone calls and emails from class members but none voiced any objection. To the contrary, all expressed thanks and congratulations for our having secured the proposed settlement.

**Support for fee and expense reimbursement request**

26. Since March 2015 through the date of this declaration, TSF has expended over 2200 hours prosecuting this case.

27. I personally have spent over 2000 hours on this case. My current billing rate is $800 an hour. I am personally aware that Philadelphia attorneys with my background and experience regularly charge over $1,000 an hour for their services and former Judge Bernstein and current Judge Jacqueline Allen of the Philadelphia Court of Common Pleas have approved a rate of $790 an hour for my services in the Wal-Mart  class action. The remaining time was paralegal time and associate time at $350 an hour and $150 an hour, respectively. Thus, the lodestar value of TSF's work on this case, without factoring in any multiplier, exceeds $1,700,000.   This does not include uncompensated time spent on numerous individual Koresko related cases that has been of substantial benefit to the prosecution of this class action.

28. New expenses incurred by TSF total $19,145.51, itemized as follows:

| Description | Date | Total Price |
|---|---|---|
| Advice on tax consequences of settlements | Jan 03, 2018 | $2,200.00 |
| Conference call | Jan 02, 2018 | $0.22 |
| Mediation fee | Jan 02, 2018 | $3,416.67 |
| Conference call service | Dec 29, 2017 | $3.49 |
| Taxi fare | Dec 28, 2017 | $12.56 |
| Pre-mediation conference meal | Dec 27, 2017 | $148.25 |
| Delivery to mediator | Dec 20, 2017 | $5.39 |
| Delivery to mediator | Dec 20, 2017 | $43.75 |
| Damages expert | Oct 12, 2017 | $7,906.00 |
| Conference call service | Jul 10, 2017 | $5.20 |
| Mediation fee | Jul 05, 2017 | $410.66 |
| Conference call service | Jul 03, 2017 | $4.91 |
| Prep session for mediation | May 21, 2017 | $156.72 |
| Binding for mediation presentation | May 18, 2017 | $104.95 |
| Mediator's fee | May 18, 2017 | $3,808.34 |
| Mediator's fee | June 15, 2018 | $237.00 |
| Class Notice printing and mailing | May 16, 2018 | $681.40 |

I swear under penalty of perjury that the foregoing is true and correct.  Executed this 15th day of June 2018, in Philadelphia, Pennsylvania.

*/s/ Ira Silverstein*
Ira Silverstein

# Exhibit A

## SETTLEMENT AGREEMENT AND RELEASE

This Settlement Agreement and Release ("Settlement Agreement") is made and entered into as of March 28, 2018, by and between Plaintiffs Harvey Kalan, M.D., The Harvey Kalan, M.D., Inc. Employee Welfare Benefit Plan, Pamela K. Erdman, M.D., The Dr. Pamela K. Erdman, M.D., Inc. Employee Welfare Benefit Plan, Martin Zenni, M.D., Elisa Zenni, M.D., and The M&E Zenni, Inc. Welfare Benefit Plan (collectively, the "Named Plaintiffs"), individually and on behalf of the settlement class defined below (the "Settlement Class"), on the one hand, and Defendant Farmers & Merchants Trust Company of Chambersburg as successor by merger to Community Trust Company ("F&M"), on the other hand.  The Named Plaintiffs, the Settlement Class, and F&M are collectively referred to herein as the "Parties."

**WHEREAS**, the Named Plaintiffs filed a putative class action against F&M and several other defendants in the United States District Court for the Eastern District of Pennsylvania (the "Court"), styled *Harvey Kalan, M.D., et al. v. Farmers & Merchants Trust Company of Chambersburg as Successor by Merger to Community Trust Company, et al.*, Civil Action No. 15-01435 (the "Class Action");

**WHEREAS**, the Named Plaintiffs allege in the Class Action that F&M committed breaches of fiduciary duty and other actionable forms of misconduct;

**WHEREAS**, F&M denies each and every claim asserted by the Named Plaintiffs in the Class Action;

**WHEREAS**, no class has been certified in the Class Action as to the claims against F&M and the Named Plaintiffs will seek certification of the Settlement Class as defined in paragraph 1, below;

**WHEREAS**, the Parties desire fully, finally, and forever to resolve, discharge, and settle the claims the Named Plaintiffs have or could have brought, individually and on behalf of the

Settlement Class, against F&M in the Class Action upon the terms and conditions set forth in this Settlement Agreement; and

**WHEREAS**, the Named Plaintiffs, F&M, and their respective counsel are satisfied that the terms and conditions of this Settlement Agreement are fair, reasonable, and adequate, particularly given that continued litigation would be protracted and involve substantial expense, and;

**NOW, THEREFORE**, in consideration of the covenants, conditions, mutual promises, and payments set forth herein, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Parties agree as follows:

1. **Settlement Class.** The Named Plaintiffs are entering into this Settlement Agreement individually and on behalf of the Settlement Class which consists of: (i) any and all benefit plans, including those governed by the Employee Retirement Income Security Act of 1974, also known as ERISA, and those not governed by ERISA, whose assets, investments, or interests are held by the Regional Employers Assurance Leagues Voluntary Employees' Beneficiary Association Trust, also known as the REAL VEBA Trust, or the Single Employer Welfare Benefit Plan Trust also known as SEWBPT (together the "Trusts"), which Trusts are now under the control of a court-appointed independent fiduciary; and (ii) any and all participants in and beneficiaries of, or individuals with legal or beneficial interests in, the benefit plans whose assets, investments, or interests are held by the Trusts. The Named Plaintiffs are informed and believe that the Settlement Class contains more than 200 employee benefit plans whose assets and/or investments are held by the Trusts and more than 500 participants and beneficiaries of these plans.

2.      **Settlement Payment.**

(a)      F&M shall pay the sum of Ten Million Dollars ($10,000,000.00) (the "Settlement Payment") in settlement of all claims that the Named Plaintiffs and the Settlement Class have brought, or could have brought, against F&M, including, but not limited to, claims for damages, disgorgement, restitution, attorney's fees, costs, expenses, taxes, or sums of any kind. The Settlement Payment shall be made no later than ten (10) business days following the Court's issuance of an order preliminarily approving this Settlement Agreement and shall be made in accord with the Court's order.

(b)      The motion for preliminary approval shall request that the Court's order provide that the Settlement Payment be wired into the IOLTA account of the Named Plaintiffs' counsel (the "IOLTA Account"), which request shall not be opposed by F&M.  The Settlement Payment shall remain in the IOLTA Account until the Court finally approves this Settlement Agreement and issues an order authorizing the distribution of the Settlement Payment.  If this Settlement Agreement is not finally approved by the Court or is terminated under paragraph 8 below, the Settlement Payment shall immediately be refunded by wire transfer to an account designated by F&M.

3.      **Release of Claims.**

(a)      The "Plaintiff Releasing Parties" are all members of the Settlement Class (including the Named Plaintiffs) and their respective heirs, beneficiaries, executors, administrators, trustees, successors, assigns and personal representatives as well as all employer sponsors of the Settlement Class benefit plans, jointly and severally.

(b)     The "F&M Releasing Parties" are F&M and its past, present, and future parents, subsidiaries, affiliates, and the predecessors, successors or assigns of any of them, jointly and severally.

(c)     Upon the Court's final approval of this Settlement Agreement and in addition to the preclusive effect of any final judgment entered in accordance with such approval:

(i)     The Plaintiff Releasing Parties, in consideration of the Settlement Payment and other good and valuable consideration, release and forever discharge F&M and its past, present, and future owners, members, shareholders, officers, directors, employees, parents, subsidiaries, affiliates, insurers in their capacity as insurers, brokers, agents, attorneys and the predecessors, successors or assigns of any of them, jointly and severally (the "F&M Released Parties"), of and from any and all manner of claims, complaints, allegations, actions, suits, causes of actions, demands, and grievances, of any kind or nature whatsoever, whether individual, class, or otherwise, as well as all forms of relief, including all accountings, costs, damages, disgorgement, restitution, debts, exemplary or punitive damages, expenses, liabilities, losses, remedies, indemnification, contribution and attorney and/or other professional fees and related disbursements, whether direct or derivative, nominal or beneficial, possessed or claimed, known or unknown, suspected or unsuspected, choate or inchoate, in law or in equity, whether brought under federal, state, or any other jurisdiction's law, that the Plaintiff Releasing Parties, whether or not they object to this Settlement

Agreement and whether or not they make a claim upon or receive a distribution from the Settlement Payment, ever had, now have, or hereafter can, shall, or may have, directly, representatively, derivatively, or in any other capacity, to the extent arising out of or related to the claims and causes of action alleged, or any and all claims or causes of action that could have been alleged, in the Class Action (the "Released Plaintiff Claims"). This release does not include any claims to enforce this Settlement Agreement, any claims that have been or could be brought against John J. Koresko, V, Koresko & Associates, P.C., or against any insurance company or insurance agent that sold life insurance policies to the Trusts. These exclusions are to eliminate any possible ambiguity and mean that John J. Koresko, V, Koresko & Associates, P.C., and insurance companies and agents that sold life insurance policies to the Trusts are not within the definition of the F&M Released Parties;

(ii)    The F&M Releasing Parties, for good and valuable consideration, release and forever discharge all members of the Settlement Class (including the Named Plaintiffs) and their respective heirs, beneficiaries, executors, administrators, trustees, successors, assigns, attorneys and personal representatives as well as all employer sponsors of the Settlement Class benefit plans, jointly and severally (the "Plaintiff Released Parties") of and from any and all manner of claims, complaints, allegations, actions, suits, causes of actions, demands, and

5

grievances, of any kind or nature whatsoever, whether individual, class, or otherwise, as well as all forms of relief, including all accountings, costs, damages, disgorgement, restitution, debts, exemplary or punitive damages, expenses, liabilities, losses, remedies, indemnification, contribution, and attorneys and other professional fees and related disbursements, whether direct or derivative, nominal or beneficial, possessed or claimed, known or unknown, suspected or unsuspected, choate or inchoate, in law or in equity, whether brought under federal, state, or any other jurisdiction's law, that the Parties ever had, now have, or hereafter can, shall, or may have, directly, representatively, derivatively, or in any other capacity, to the extent arising out of or related to the claims and causes of action alleged, or any and all claims or cause of action that could have been alleged, in the Class Action (the "Released F&M Claims").  This release does not include any claims to enforce this Settlement Agreement, or any claims that have been or could be brought against John J. Koresko, V, Koresko & Associates, P.C., or against any insurance company or insurance agent that sold life insurance policies to the Trusts. These exclusions are to eliminate any possible ambiguity and do mean that John J. Koresko, V, Koresko & Associates, P.C., and insurance companies and agents that sold life insurance policies to the Trusts fall are not within the definition of the Plaintiff Released Parties ;

(iii)     The Plaintiff Releasing Parties and the F&M Releasing Parties
(collectively, the "Releasing Parties") knowingly, expressly, and
irrevocably waive any and all defenses, rights, or benefits that the
Releasing Parties may have which limit to any extent the releases in
paragraph 3(c)(i) and (ii) above.  This waiver includes, but is not limited
to, any and all defenses, rights, or benefits that the Releasing Parties
might otherwise have under:

     1.     Section 1542 of the California Civil Code, which provides:

> **Section 1542.  General release; extent.  A general
> release does not extend to claims which the
> creditor does not know or suspect to exist in his
> or her favor at the time of executing the release,
> which if known by him or her must have
> materially affected his or her settlement with the
> debtor.**

     or

     2.     Any law of any state or territory of the United States or other
jurisdiction, or principle of common law, which is similar,
comparable, or equivalent to section 1542 of the California
Civil Code.

(iv)     The Plaintiff Releasing Parties may hereafter discover facts other
than or different from those which they know or believe to be true with
respect to the Released Plaintiff Claims, but the Plaintiff Releasing
Parties expressly waive and fully, finally, and forever settle and release,
any known or unknown, suspected or unsuspected, contingent or non-
contingent, accrued or unaccrued claim which would otherwise fall
within the definition of Released Plaintiff Claims, whether or not

concealed or hidden, without regard to the subsequent discovery or existence of such different or additional facts.

(v)     The F&M Releasing Parties may hereafter discover facts other than or different from those which they know or believe to be true with respect to the Released F&M Claims, but the F&M Releasing Parties expressly waive and fully, finally, and forever settle and release, any known or unknown, suspected or unsuspected, contingent or non-contingent, accrued or unaccrued claim which would otherwise fall within the definition of Released F&M Claims, whether or not concealed or hidden, without regard to the subsequent discovery or existence of such different or additional facts.

(vi)    The Plaintiff Releasing Parties covenant and agree that they will not sue or otherwise seek to impose liability against any of the F&M Released Parties based on the Released Plaintiff Claims, and the F&M Releasing Parties covenant and agree that they will not sue or otherwise seek to impose liability against any of the Plaintiff Released Parties based on the Released F&M Claims.

(vii)   None of the releases, waivers and covenants described herein apply to claims to enforce the terms of this Settlement Agreement and the Court shall retain jurisdiction over such claims.

4.     **Preliminary Court Approval.**  No later than twenty-eight days (28) days following the execution of this Settlement Agreement by all Parties, the Named Plaintiffs shall file with the Court, and Defendants shall not oppose, a motion for preliminary approval of this

Settlement Agreement provided, however, that Named Plaintiffs' counsel shall provide a draft of any such motion and related papers to counsel for Defendants in advance of filing with a reasonable opportunity to review and approve the content thereof, which approval shall not unreasonably be withheld. The motion will request that the Court enter an order that: (i) preliminarily approves this Settlement Agreement; (ii) preliminarily certifies the Settlement Class as a mandatory class pursuant to Rule 23(b)(1) of the Federal Rules of Civil Procedure; (iii) declares that if this Settlement Agreement is not approved by the Court or is terminated by the Parties, certification of the Settlement Class will automatically be vacated, and F&M may thereafter fully contest certification of any class which any of the Named Plaintiffs seeks to certify; (iv) stays all proceedings in the Class Action, except those proceedings related to effectuating and complying with this Settlement Agreement, pending the Court's final approval of this Settlement Agreement; (v) orders the Settlement Payment be wired into the IOLTA account of the Named Plaintiffs' counsel (the "IOLTA Account") within ten (10) business days of the preliminary approval order, subject to the refund provisions of paragraphs 2(b) and 8(c) of this Agreement; and (vi) authorizes the dissemination of notice of settlement to the Settlement Class by the Named Plaintiffs' counsel or by the court-appointed Independent Fiduciary or court-appointed Administrator overseeing the Trusts.

5.      **Notice Procedures for Members of the Settlement Class.**

(a)      The Named Plaintiffs' counsel will ensure that notice is provided to the Settlement Class of the Court's preliminary approval of the settlement provided for in this Settlement Agreement and, if required by the Court, exclusion procedures in the form and manner approved by the Court, and will perform such related duties as may be necessary.  F&M

will not object to the notice or, if required, exclusion procedures, provided that the Court finds the procedures comply with the requirements of Rule 23 of the Federal Rules of Civil Procedure.

(b)     If the Court does not certify the Settlement Class as a mandatory class under Rule 23(b)(1), no later than ten (10) days following expiration of the period for members of the Settlement Class to opt out and be excluded from the Settlement Class, Named Plaintiffs' counsel will provide Defendants' counsel with a list (i) identifying each member of the Settlement Class that seeks to opt out and be excluded from this Settlement Agreement, and (ii) stating whether the request for exclusion was properly and timely made. Named Plaintiffs' counsel will attach to the list a copy of all documentation concerning each request for exclusion.

(c)     F&M will not bear any cost, obligation, responsibility, or liability with respect to any of the notice and exclusion procedures, except with regard to the notice required by paragraph 6, below.

6.     **Notice to Appropriate Federal and State Officials.**  No later than five (5) days before the motion for preliminary approval of this Settlement Agreement is filed with the Court, the Named Plaintiffs' counsel will provide to F&M's counsel the name and last known address of each member of the Settlement Class known to them and the proposed notice to members of the Settlement Class that is required by paragraph 5(a) above.  No later than ten (10) days after the motion for preliminary approval is filed with the Court, F&M's counsel will file with the appropriate federal official and the appropriate state official the information and documents required by the Class Action Fairness Act of 2005, 28 U.S.C. § 1715.

7.     **Final Court Approval.**  As soon as the Court allows, the Named Plaintiffs will file with the Court a motion for entry of a final order and judgment that:

(a)      Determines that the Court has personal jurisdiction over F&M and all members of the Settlement Class and subject matter jurisdiction to finally approve this Settlement Agreement;

(b)      Finally approves this Settlement Agreement as fair, reasonable, and adequate for members of the Settlement Class, within the meaning of Rule 23 of the Federal Rules of Civil Procedure and any other applicable laws or rules;

(c)      Approves the releases set forth in paragraph 3 above, enjoins the Plaintiff Releasing Parties from asserting against the F&M Released Parties any of the Released Plaintiff Claims, and enjoins the F&M Releasing Parties from asserting against the Plaintiff Released Parties any of the Released F&M Claims;

(d)      Defines the Settlement Class in accordance with Paragraph 1 above, and finally certifies the Settlement Class for purposes of this Settlement Agreement;

(e)      Finds that F&M has served upon the appropriate federal official and the appropriate state official of each state in which a member of the Settlement Class resides the information and documents that comply with the requirements of the Class Action Fairness Act, 28 U.S.C. § 1715;

(f)      Subject to paragraph 11(e)(ii), authorizes distribution of the Settlement Payment  to the court-appointed Independent Fiduciary or court-appointed Administrator overseeing the Trusts; and

(g)      Provides that the Class Action shall be dismissed with prejudice as to F&M without attorney's fees or costs.

(h)      Approves the dismissal without prejudice of all claims asserted by the Named Plaintiffs against Pennmont Benefits, Inc., John Doe Companies 1-50, Lawrence

Koresko, Koresko Financial, LLP, and Freedom Brokers, LLC, as well as all claims asserted by

F&M in its Third Party Complaint filed May 9, 2016, the intent of the Parties being that this

Settlement Agreement shall result in the complete dismissal of the Class Action including all

remaining claims, cross-claims, counterclaims and third-party claims asserted therein upon

issuance of, and subject to, final approval of this Settlement Agreement by the Court.

Named Plaintiffs' counsel shall provide a draft of any such motion and related papers to

counsel for Defendants in advance of filing with a reasonable opportunity to review and approve

the content thereof, which approval shall not unreasonably be withheld.

8. **Termination.**

(a)     Any of the Parties may terminate this Settlement Agreement by providing

written notice to counsel for the other Parties and to the Court within ten (10) days after any of

the following occurs:

(i)     The Court rejects the motion for preliminary approval of this

Settlement Agreement contemplated by paragraph 4 above or seeks to modify any of this

Settlement Agreement's terms;

(ii)     The Court rejects the motion for final approval of this Settlement

Agreement contemplated by paragraph 7 above or seeks to modify any of this Settlement

Agreement's terms;

(iii)     The Court enters an order that imposes on F&M additional

financial obligations or other material obligations that are not contemplated by this Settlement

Agreement;

(iv)     An appellate court overturns or modifies any order or judgment of

the Court granting preliminary or final approval of this Settlement Agreement; or

(v)      Any court issues a decision or order affecting in whole or in part the definition of the Settlement Class in paragraph 1 above, the Settlement Payment in paragraph 2 above, the releases in paragraph 3 above, or other material terms or conditions of this Settlement Agreement.

(b)      If the Court does not certify the Settlement Class as a mandatory class and any member timely requests exclusion from the Settlement Class, F&M may, but is not required to, terminate this Settlement Agreement by providing written notice to counsel for the Named Plaintiffs and the Court no later than, ten (10) days after counsel for the Named Plaintiffs provides to counsel for F&M the information on requests for exclusion that is required in paragraph 5(b) above.

(c)      In the event of the termination of this Settlement Agreement:

(i)      This Settlement Agreement will be null and void and of no force or effect whatsoever;

(ii)      The Settlement Payment will be immediately refunded to an account designated by F&M;

(iii)      Any certification of the Settlement Class by the Court will be vacated.  F&M will retain all defenses to certification and its non-opposition to the Settlement Class will not be used as evidence, and will not be admissible as such, in support of class certification in the Class Action or any other related civil action or proceeding;

(iv)      The Parties will revert to their procedural and substantive positions prior to the execution of this Settlement Agreement, including with respect to the appropriateness of class certification, as if this Settlement Agreement had not been executed;

(v)     If requested by the Court, the Parties will propose to the Court a reasonable schedule by which litigation of the Class Action may be resumed; and

(vi)    The terms and conditions of this Settlement Agreement, the facts and circumstances surrounding this Settlement Agreement, any publicly disseminated information regarding this Settlement Agreement, and any pleadings or orders concerning this Settlement Agreement may not thereafter be used as evidence, and shall not be admissible as such, in the Class Action or any other action or proceeding.

9.      **No Admission of Liability.**  The Parties agree that this Settlement Agreement reflects the resolution of disputed claims and that nothing in this Settlement Agreement, the proceedings undertaken in accordance with this Settlement Agreement, or the negotiations that preceded this Settlement Agreement shall be construed as or deemed to be evidence of, or an admission of liability by F&M for, or of the validity of, any claim that has been or could have been asserted by any member of the Settlement Class against F&M, nor shall any such matters be admissible or offered into evidence in any action or proceeding.

10.     **Stay, Continuing Jurisdiction, and Governing Law.**

(a)     The Named Plaintiffs and F&M agree to stay all proceedings in the Class Action involving F&M, except those proceedings related to effectuating and complying with this Settlement Agreement, pending the Court's final approval of this Settlement Agreement.

(b)     Upon final approval of this Settlement Agreement, the Court will retain continuing jurisdiction over the Parties to implement, administer, and enforce this Settlement Agreement.

(c)     The Parties hereby submit to the Court's exclusive jurisdiction for any suit, action, proceeding, or dispute arising out of this Settlement Agreement.

14

(d)     This Settlement Agreement shall be construed, enforced, and administered in accordance with the substantive laws of the Commonwealth of Pennsylvania without regard to its conflicts of law principles.

**11.     <u>Additional Terms and Conditions</u>.**

(a)     <u>Authority</u>.  All counsel and any other persons executing this Settlement Agreement warrant and represent that they have full authority to do so.

(b)     <u>Best Efforts</u>.  The Named Plaintiffs, F&M, and their respective counsel will undertake reasonable best efforts, including, without limitation, all efforts contemplated herein, to carry out the terms of this Settlement Agreement.  In addition to the documents and other matters referenced in this Settlement Agreement, the Named Plaintiffs, F&M, and their respective counsel will execute and deliver all documents and perform any additional acts reasonably necessary and proper to effectuate the terms of this Settlement Agreement.

(c)     <u>Binding Effect</u>.  This Settlement Agreement shall be binding on, and inure to the benefit of, the successors and assigns of the Parties and the Release Parties.

(d)     <u>Notices</u>.  Any notice, information, or materials to be provided under this Settlement Agreement shall be sent by e-mail and overnight delivery to:

If to the Named Plaintiffs or the Settlement Class:

> Ira Silverstein, Esquire
> The Silverstein Firm
> 1515 Market Street
> Suite 1200
> Philadelphia, PA 19102
> irasilverstein@tsfllc.net
>
> and
>
> David I. Lefkowitz, Esquire
> Wilshire Palisades Law Group, P.C.
> 1337 Ocean Avenue
> Suite A

15

Santa Monica, CA 90401
dl@wplawgroup.com

If to F&M:

Jack M. Stover, Esquire
Buchanan Ingersoll & Rooney PC
409 North Second Street
Suite # 500
Harrisburg, PA 17101-1357
jack.stover@bipc.com

and

Jayson R. Wolfgang, Esquire
Buchanan Ingersoll & Rooney PC
409 North Second Street
Suite # 500
Harrisburg, PA 17101-1357
jayson.wolfgang@bipc.com

(e)     Attorney's Fees and Costs:

(i)     The Parties shall bear their own attorney's fees and costs.

(ii)     Attorney's Fees and Costs from the Settlement Payment.  The Named Plaintiffs' counsel shall have the right, in their sole discretion, to petition the Court for payment of attorney's fees, costs, expenses, and other payments from the common fund created by the Settlement Payment.  F&M shall not oppose any such petition so long as the petition seeks payment from the common fund and not from F&M and provided the requested attorney's fees do not exceed thirty-five percent (35%) of the Settlement Payment.  Under no circumstances shall the payment from the common fund require an additional payment by F&M in excess of or in addition to the Settlement Payment.

(f)     Advice of Counsel.  The Parties acknowledge that they have been represented by independent legal counsel of their own choice, that they have executed this Settlement Agreement with the consent and advice of their counsel, that they have reviewed this

16

Settlement Agreement and fully understand its terms and contents, and that they have executed this Settlement Agreement willingly, as the result of their own free acts.

(g)    Final Agreement.  This Settlement Agreement constitutes the final agreement and understanding of the Parties concerning the subject matter hereof and supersedes any and all prior negotiations, statements, and understandings that preceded the execution of this Settlement Agreement.  The Parties have not relied on any promises, representations, conditions, or obligations not set forth herein.

(h)    Drafting and Construction.  Counsel for the Parties have materially participated in the drafting of this Settlement Agreement.  None of the Parties shall be considered solely to be the drafter of this Settlement Agreement or any provisions hereof for the purpose of any statute, law, or rule of interpretation or construction that would or might cause any provision to be construed against the drafter.

(i)    Headings.  The headings used in this Settlement Agreement are for the convenience of the reader only and shall not have any effect on the meaning or interpretation of this Settlement Agreement.

(j)    Modifications.  This Settlement Agreement may not be altered, amended, or modified except by a writing duly executed by the Parties and, to the extent required by law, approved by the Court.

(k)    Counterparts.  This Settlement Agreement may be executed in counterparts, including fax or .pdf counterparts, each of which shall be deemed an original, and all of which together shall constitute one and the same instrument.

*[SIGNATURE PAGE FOLLOWS]*

17

IN WITNESS HEREOF, AND INTENDING TO BE LEGALLY BOUND HEREBY, the

undersigned, being duly authorized on behalf of the Parties, hereby execute this Settlement

Agreement.

Farmers & Merchants Trust Company of
Chambersburg, as Successor by Merger to
Community Trust Company

By: _____
Timothy G. Henry, President & CEO

_____
Jack M. Stover, Esquire
Jayson R. Wolfgang, Esquire
409 North Second Street
Suite # 500
Harrisburg, PA 17101-1357

*Attorneys for Farmers & Merchants Trust
Company of Chambersburg as successor by
merger to Community Trust Company*

_____
Harvey Kalan, M.D., individually and on
behalf of The Harvey Kalan, M.D., Inc
Employee Welfare Benefit Plan and the
Settlement Class

_____
Pamela K. Erdman, M.D., individually and on
behalf of The Dr. Pamela K. Erdman, M.D.,
Inc. Employee Welfare Benefit Plan and the
Settlement Class

_____
Dr. Martin Zenni, individually and on behalf
of the Settlement Class

_____
Dr. Elissa Zenni, individually and on behalf
of the Settlement Class

_____
Dr. Martin Zenni, on behalf of the
M&E Zenni Inc., Welfare Benefit Plan, and
on behalf of the Settlement Class

_____
Ira B. Silverstein, Esquire
The Silverstein Firm LLC
1515 Market Street
Suite 1200
Philadelphia, PA 19102

_____
David I. Lefkowitz, Esquire
Wilshire Palisades Law Group, P.C.
1337 Ocean Avenue, Suite A
Santa Monica, CA 90401

*Attorneys for the Named Plaintiffs and
the Settlement Class*

18

Exhibit B

## SETTLEMENT AGREEMENT AND RELEASE

This Settlement Agreement and Release ("Settlement Agreement") is made and entered into as of March 28, 2018, by and between Plaintiffs Harvey Kalan, M.D., The Harvey Kalan, M.D., Inc. Employee Welfare Benefit Plan, Pamela K. Erdman, M.D., The Dr. Pamela K. Erdman, M.D., Inc. Employee Welfare Benefit Plan, Martin Zenni, M.D., Elisa Zenni, M.D., and The M&E Zenni, Inc. Welfare Benefit Plan (collectively, the "Plaintiffs"), Defendant Farmers & Merchants Trust Company of Chambersburg as successor by merger to Community Trust Company ("F&M"), and Lawrence Koresko, Koresko Financial, LP incorrectly identified as Koresko Financial, LLP, and Freedom Brokers, LLC (Lawrence Koresko, Koresko Financial, LP, and Freedom Brokers shall be referred to, collectively, as the "LK Parties"). The Plaintiffs, F&M, and the LK Parties are collectively referred to herein as the "Parties."

**WHEREAS**, the Plaintiffs filed a putative class action against F&M, the LK Parties and several other defendants in the United States District Court for the Eastern District of Pennsylvania (the "Court"), styled *Harvey Kalan, M.D., et al. v. Farmers & Merchants Trust Company of Chambersburg as Successor by Merger to Community Trust Company, et al.*, Civil Action No. 15-01435 (the "Litigation");

**WHEREAS**, in the Litigation, F&M and the LK Parties have asserted crossclaims against each other, including claims for indemnification and contribution;

**WHEREAS**, F&M and the LK Parties deny each and every claim asserted by the Plaintiffs and each other in the Litigation;

**WHEREAS**, the Parties desire fully, finally, and forever to resolve, discharge, and settle the claims F&M and the LK Parties have or could have brought against each other; and,

**WHEREAS**, Plaintiffs desire to dismiss without prejudice the claims asserted against the LK Parties in the Litigation; and

**WHEREAS**, the Parties, while contesting the claims being settled herein, wish to avoid the time and expense of continued litigation;

**NOW, THEREFORE**, in consideration of the covenants, conditions, and mutual promises, set forth herein, and for other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the Parties agree as follows:

1. <u>**Release of Claims**</u>.

   (a)   Defined terms:

       (i)   The "Plaintiff Releasing Parties" are the Plaintiffs and their respective heirs, beneficiaries, executors, administrators, trustees, successors, assigns, and personal representatives as well as the employer sponsors of the Plaintiff benefit plans.

       (ii)   The "F&M Releasing Parties" are F&M and its past, present, and future owners, members, shareholders, officers, directors, employees, parents, subsidiaries, affiliates, insurers, brokers, agents, and the predecessors, successors or assigns of any of them, jointly and severally.

       (iii)   The "LK Releasing Parties" are Lawrence Koresko and his heirs, beneficiaries, executors, administrators, trustees, successors, assigns and personal representatives, and Koresko Financial, LP incorrectly identified in the Litigation as Koresko Financial, LLP, and Freedom Brokers, LLC, and each of their respective past, present and future owners, members, shareholders, officers, directors, employees, parents, subsidiaries, affiliates, insurers, brokers, agents, and the successors or assigns of any of them, jointly and severally.

(iv)    The "Putative Class Members" are (i) any and all benefit plans, including those governed by the Employee Retirement Income Security Act of 1974, also known as ERISA, and those not governed by ERISA, whose assets, investments, or interests are held by the Regional Employers Assurance Leagues Voluntary Employees' Beneficiary Association Trust, also known as the REAL VEBA Trust, or the Single Employer Welfare Benefit Plan Trust, also known as SEWBPT (together the "Trusts"), which Trusts are now under the control of a court-appointed independent fiduciary; and (ii) any and all participants in and beneficiaries of, or individuals with legal or beneficial interests in, the benefit plans whose assets, investments, or interests are held by the Trusts.

(b)    The F&M Releasing Parties, jointly and severally, for good and valuable consideration, release and forever discharge Lawrence Koresko, his heirs, beneficiaries, executors, administrators, trustees, successors, assigns and personal representatives, and Koresko Financial, LP incorrectly identified in the Litigation as Koresko Financial, LLP, and Freedom Brokers, LLC, and each of their respective past, present and future owners, members, shareholders, officers, directors, employees, parents, subsidiaries, affiliates, insurers, brokers, agents, attorneys and the predecessors, and the successors or assigns of any of them, jointly and severally (the "LK Released Parties"), of and from any and all manner of claims, complaints, allegations, demands, actions, suits, causes of actions, and grievances, of any kind or nature

3

whatsoever, as well as all forms of relief, including all accountings, costs, damages, disgorgement, restitution, debts, exemplary or punitive damages, expenses, liabilities, losses, remedies, indemnification, contribution, and attorneys and other professional fees and related disbursements, whether direct or derivative, nominal or beneficial, possessed or claimed, known or unknown, suspected or unsuspected, choate or inchoate, in law or in equity, whether brought under federal, state, or any other jurisdiction's law, that the F&M Releasing Parties ever had, now have, or hereafter can, shall, or may have, including claims for indemnification or contribution to the extent arising out of or related to the claims and causes of action alleged, or any and all claims or cause of action that could have been alleged, in the Litigation (the "Released F&M Claims"). This release is contingent and shall only be effective upon the Court's final approval of that certain Settlement Agreement and Release between the Plaintiffs, acting on behalf of the Putative Class Members, and F&M dated March 28, 2018 ("the Class Settlement Agreement"). This release does not include any claim by the F&M Releasing Parties, or any of them, to enforce the terms of this Settlement Agreement, any claims that have been or could be brought against John J. Koresko, V or Koresko & Associates, P.C., or against any insurance company or insurance agent, other than the LK Released Parties, that sold life insurance policies to the Trusts. These exclusions are to eliminate any possible ambiguity and mean that John J. Koresko, V, Koresko & Associates, P.C., and insurance companies and agents (other than Lawrence Koresko,

4

Koresko Financial, LP incorrectly identified in the Litigation as Koresko

Financial, LLP, and Freedom Brokers, LLC) that sold life insurance policies

to the Trusts, , are not within the definition of the LK Released Parties;

(c)     The LK Releasing Parties, jointly and severally, for good and valuable

consideration, release and forever discharge F&M and its past, present, and future owners,

members, shareholders, officers, directors, employees, parents, subsidiaries, affiliates, insurers,

brokers, agents, attorneys and the predecessors, successors or assigns of any of them, jointly and

severally (the "F&M Released Parties"), of and from any and all manner of claims, complaints,

allegations, demands, actions, suits, causes of actions,  and grievances, of any kind or nature

whatsoever, as well as all forms of relief, including all accountings, costs, damages,

disgorgement, restitution, debts, exemplary or punitive damages, expenses, liabilities, losses,

remedies, indemnification, contribution, and attorneys and other professional fees and related

disbursements, whether direct or derivative, nominal or beneficial, possessed or claimed, known

or unknown, suspected or unsuspected, choate or inchoate, in law or in equity, whether brought

under federal, state, or any other jurisdiction's law, that the LK Releasing Parties ever had, now

have, or hereafter can, shall, or may have, including claims for indemnification or contribution to

the extent arising out of or related to the claims and causes of action alleged, or any and all

claims or cause of action that could have been alleged, in the Litigation (the "Released LK

Claims").   This release is contingent and shall only be effective upon the Court's final approval

of the Class Settlement Agreement.  This release does not include any claim by the LK Releasing

Parties, or any of them, to enforce the terms of this Settlement Agreement, any claims that have

been or could be brought against John J. Koresko, V or Koresko & Associates, P.C., or against

any insurance company or insurance agent that sold life insurance policies to the Trusts. These

5

exclusions are to eliminate any possible ambiguity and mean that John J. Koresko, V, Koresko & Associates, P.C., and insurance companies and agents that sold life insurance policies to the Trusts are not within the definition of the F&M Released Parties.

        **Dismissal.**

Upon execution of this Settlement Agreement and any other contingencies set forth herein, the Parties shall take such steps as are necessary to:

    (a)    Dismiss Plaintiffs' claims against the LK Parties in the Litigation, without prejudice;

    (b)    Dismiss F&M's crossclaims against the LK Parties in the Litigation, with prejudice; and

    (c)    Dismiss the LK Parties' crossclaims against F&M in the Litigation, with prejudice.

    **2.**    **No Admission of Liability.**  Nothing in this Settlement Agreement, the Litigation or the negotiations that preceded this Settlement Agreement shall be construed as or deemed to be evidence of, or an admission of liability by F&M or the LK Parties for, or of the validity of, any claim or crossclaim that has been or could have been asserted against F&M and/or the LK Parties nor shall it be admissible or offered into evidence in any action or proceeding.

    **3.**    **Additional Terms and Conditions.**

    (a)    _Authority_.  All counsel and any other persons executing this Settlement Agreement warrant and represent that they have full authority to do so.

    (b)    _Binding Effect_.  This Settlement Agreement shall be binding on, and inure to the benefit of, the successors, assigns, and agents of the Parties, the LK

Releasing Parties and F&M Releasing Parties, and the LK Released

Parties and F&M Released Parties.

(c)     Counterparts.  This Settlement Agreement may be executed in

counterparts, including fax or .pdf counterparts, each of which shall be

deemed an original, and all of which together shall constitute one and the

same instrument.

(d)     Attorneys' Fees.  The Parties shall bear their own respective attorneys'

fees and costs in conjunction with this Agreement. In the event that any

action is brought to enforce or interpret this Agreement, the prevailing

party shall be entitled to recover in that action their reasonable attorneys'

fees from the non-prevailing party, in addition to any other relief to which

the prevailing party may be entitled.

(e)     Advice of Counsel. Each of the Parties has received or had the opportunity

to seek their or its own independent legal advice with respect to the

advisability of executing this Agreement and with respect to the releases,

waivers, and all other matters contained herein.

(g)     Choice of Law.  This Settlement Agreement shall be construed, enforced,

and administered in accordance with the substantive laws of the

Commonwealth of Pennsylvania without regard to its conflicts of law

principles.

*[SIGNATURE PAGE FOLLOWS]*

7

IN WITNESS HEREOF, AND INTENDING TO BE LEGALLY BOUND HEREBY, the

undersigned, being duly authorized on behalf of the Parties, hereby execute this Settlement

Agreement.

Farmers & Merchants Trust Company of
Chambersburg, as Successor by Merger to
Community Trust Company

By: _____
      Timothy G. Henry, President & CEO

_____
Jack M. Stover, Esquire
Jayson R. Wolfgang, Esquire
409 North Second Street
Suite # 500
Harrisburg, PA 17101-1357

*Attorneys for Farmers & Merchants Trust
Company of Chambersburg as successor by
merger to Community Trust Company*

_____
Harvey Kalan, M.D., individually and on
behalf of The Harvey Kalan, M.D., Inc
Employee Welfare Benefit Plan

_____
Pamela K. Erdman, M.D., individually and on
behalf of The Dr. Pamela K. Erdman, M.D.,
Inc. Employee Welfare Benefit Plan

_____
Dr. Martin Zenni

_____
Dr. Elissa Zenni

_____
Dr. Martin Zenni, on behalf of The
M&E Zenni Inc., Welfare Benefit Plan

_____
Lawrence Koresko, individually and on
behalf of Koresko Financial, LP, and
Freedom Brokers, LLC

_____
James Bainbridge, Esquire
The Bainbridge Law Firm, LLC
1250 Germantown Pike, Suite 203
Plymouth Meeting, PA 19462
(484) 690-4542

*Attorneys for Lawrence Koresko, individually
and on behalf of Koresko Financial, LLP, and
Freedom Brokers, LLC*

_____
Ira B. Silverstein, Esquire
The Silverstein Firm LLC
1515 Market Street
Suite 1200
Philadelphia, PA 19102

_____
David I. Lefkowitz, Esquire
Wilshire Palisades Law Group, P.C.
1337 Ocean Avenue, Suite A
Santa Monica, CA 90401

*Attorneys for the Named Plaintiffs and
the Settlement Class*

8

Exhibit C

**NOTICE OF CLASS CERTIFICATION AND PROPOSED SETTLEMENT**

READ THIS NOTICE CAREFULLY.  YOUR LEGAL RIGHTS MAY BE AFFECTED

YOU HAVE **NOT** BEEN SUED.

*A federal court authorized this notice.  This is not a solicitation from a lawyer*

A class action lawsuit (the "Lawsuit") is pending in the United States District Court for the Eastern District of Pennsylvania (the "Court") against a number of defendants including Farmers & Merchants Trust Company of Chambersburg As Successor by Merger to Community Trust Company ("F&M").  The Lawsuit alleges that F&M improperly allowed John J. Koresko, V, PennMont Benefit Services, Inc., Koresko and Associates, P.C., Koresko Law Firm, P.C. and Penn Public Trust (the "Koresko Parties") to convert funds that belonged to employee benefit plans, in violation of a federal statute known as ERISA  and state common law.  The Lawsuit seeks to require F&M to make the benefit plans whole by restoring the converted funds to certain trusts which Mr. Koresko created as part of an arrangement for purchasing life insurance that you may have participated in.  F&M denies any wrongdoing.

Available records indicate that you participated in the life insurance arrangement promoted by Mr. Koresko ("the Arrangement"), and  that you or a related entity have a stake in the trusts Mr. Koresko created as part of the  Arrangement. The trusts are known as the REAL VEBA Trust ("REAL VEBA") and the Single Employer Welfare Benefit Plan Trust ("SEWBPT"). Collectively, the  REAL  VEBA and the SEWBPT will be referred to as  the "Trusts".

Plaintiffs have negotiated a settlement with F&M and asked the Court to approve the settlement and to have  the case proceed as a class action. As part of this process, the Court has authorized this notice to be sent informing the members of the "Class," a group of people and entities that could include you, of the proposed settlement and of your rights with respect to the lawsuit and the proposed settlement. The Class consists of (i) any and all benefit plans, including those governed by the Employee Retirement Income Security Act of 1974, also known as ERISA, and those not governed by ERISA, whose assets, investments, or interests are held by the Regional Employers Assurance Leagues Voluntary Employees' Beneficiary Association Trust, also known as the REAL VEBA Trust, or the Single Employer Welfare Benefit Plan Trust also known as SEWBPT (together the "Trusts"), which Trusts are now under the control of a court-appointed independent fiduciary; and (ii) any and all participants in and beneficiaries of, or individuals with legal or beneficial interests in, the benefit plans whose assets, investments, or interests are held by the Trusts.

## THE PROPOSED SETTLEMENT

The proposed settlement provides for F&M to pay $10,000,000 (ten million dollars) for the benefit of the Class through the court-supervised administration of the Trusts. In addition, the Plaintiffs are voluntarily dismissing the claims they have asserted against the other remaining defendants.  The voluntary dismissal is without prejudice to your rights as it is not being done in the name of the Class.  The proposed settlement further provides for a release by Plaintiffs and the Class, and various parties associated with them, of all claims that they ever had, now have, or hereafter can have against F&M arising out of or related to the claims and causes of action which have been or could have been alleged in the Lawsuit. It further provides for a release by F&M, and various parties associated with F&M, of all claims that they ever had, now have, or hereafter can have against the Class arising out of or related to the claims and causes of action which have been or could have been alleged in the Lawsuit. This release does not include any claims to enforce the Settlement Agreement.

## BASIC INFORMATION ABOUT THE LAWSUIT

### Why Did I Get this Notice?

Records indicate that you are a member of the Class, i.e., you are a benefit plan, a participant in a benefit plan, or a beneficiary of a benefit plan which was part of the Koresko Arrangement and whose assets are held by the Trusts. This Notice explains that the Court has allowed, or "certified," a  class action lawsuit that may affect you. You have legal rights that you may exercise. Judge Wendy Beetlestone of the United States District Court for the Eastern District of Pennsylvania is overseeing this class action. The case is known  as *Harvey Kalan, M.D., et al. v. Farmers & Merchants.*, Civil Action No.  2:15-CV-01435-WB.

### What is the lawsuit about?

In the Lawsuit, Plaintiffs, who are stakeholders in the Trusts, allege, on behalf of the Class, that for about ten (10) years, beginning in 2004, the Koresko Parties misappropriated millions of dollars of the Trusts' assets, and made illegal payments from those funds to various law firms and other entities. Plaintiffs seek to require F&M to compensate the Trusts for any funds wrongfully taken by the Koresko Parties while F&M or its predecessor, Community Trust Company ("CTC"), was trustee of the Trusts. F&M has denied any wrongdoing or legal liability with regard to Plaintiffs' claims.

### What is a class action and who is involved?

In a class action lawsuit, one or more people called "Class Representatives," sue on behalf of themselves and other people who have similar claims. The people and entities who the Class Representatives sue on behalf of are called a "Class" or "Class Members." The Class Representatives and all the Class Members are called Plaintiffs.  F&M and others the Plaintiffs sued are called the Defendants. One court will resolve the issues raised by the Lawsuit for all Class Members.

### What has happened in the lawsuit so far?

The lawsuit was started on March 20, 2015. An amended complaint was filed on January 4, 2016. Subsequent to the filing of the amended complaint, Plaintiffs negotiated settlements with many of the defendants. These settlements were approved by the Court after notice to the Class. A second amended complaint was then filed against the remaining defendants, including F&M.  Substantial written discovery has taken place, including exchange of tens of thousands of pages of documents, numerous in-person interviews, and extensive motion practice .  In addition, the parties have participated in two full-day mediations with two different mediators .

**Is there any money available now?**

No money or benefits are available now. The funds that will be paid by F&M as part of the proposed settlement will be paid into the Trusts and the Court will decide how those funds should be distributed as part of the process of dissolving the Trusts in a related case brought by the United States Department of Labor, *Acosta v. Koresko et al.*, E.D. Pa., 2:09-cv-0988-WB. The money from the prior settlements has already been paid to the Trusts.

## DETERMINING IF YOU ARE A MEMBER OF THE CLASS

**How do I know if I am a Class Member?**

You are a member of the Class if you are a benefit plan whose assets are held by the Trusts, or you are a participant in or a beneficiary of such a plan. If you are a member of the Class, you should have been receiving communications from the Court in the *Acosta* case advising you of your entitlement to a distribution from the Trusts. If you are not sure whether you are included in the Class, you can get free help by calling or writing to the lawyers representing the Class in this case at the phone numbers or addresses listed below.

## YOUR RIGHTS AS A CLASS MEMBER

As a member of the Class, you will benefit from the proposed settlement. You will also be able to express your opinion as to whether the settlement is adequate and the fairness of the fees and expenses to be awarded to the attorneys who handled the case on your behalf. You will be bound by any decisions the Court makes concerning these matters.

**Your options concerning the proposed settlement**

You have the right to express your opinion concerning the proposed settlement and the requested attorneys' fees. You may do so by sending written notice to the lawyers representing the Class and F&M <u>and</u> by filing your objections with the Court. The addresses of the lawyers are set forth below. Any opposition to the proposed settlement must be postmarked by **June 18, 2018**. The notice of opposition must include:

- Your name, address, and telephone number;
- A statement confirming that you oppose the proposed settlement;
- The reasons for your opposition; and
- The case name and number: Harvey Kalan, M.D., et al. v. Farmers & Merchants et al., Civil Action No. 2:15-CV-01435-WB.

You do not need to do anything to participate in the Settlement. If you are a Class Member, you will automatically receive a share of the Settlement and you will release your claims against F&M and the F&M Released Parties without any further action on your part.

## THE LAWYERS REPRESENTING THE CLASS

The Court has appointed lawyers to represent the Class. These lawyers are called Class Counsel. The Court has approved two law firms to serve as Class Counsel, The Silverstein Firm and Wilshire Palisades Law Group, P.C. Their contact information is:

| | |
|---|---|
| **The Silverstein Firm LLC** | **Wilshire Palisades Law Group, PC c/o David Lefkowitz** |
| 1515 Market Street, Ste. 1200 | 1337 Ocean Avenue |
| Philadelphia, PA 19102 | Suite A, Santa Monica, CA 90401 |
| Phone: (215) 854-4068 | Office (310)393-4929 |
| Email: | Fax (310)393-5438 |
| irasilverstein@tsfllc.net | Email: dl@wplawgroup.com |

The contact information for the lawyers representing F&M is:

**Jack M. Stover, Esquire**
**Jayson R. Wolfgang, Esquire** 409
North Second Street Suite # 500
Harrisburg, PA 17101-1357
jack.stover@bipc.com
jayson.wolfgang@bipc.com

**How will Class Counsel be paid, and will the Class Representatives receive compensation?**

If a recovery is obtained for the Class, Class Counsel will request the Court to award attorneys' fees and expenses. Class Members are not personally liable or directly charged for any such fees and costs. These fees and expenses have been incurred as Class Counsel pursued the Lawsuit on behalf of the Class for three (3) years without receiving any compensation for their services or reimbursement of their out-of-pocket expenses on the claims in the proposed settlement. Class Counsel have undertaken significant risks and expended extensive time to prosecute this Lawsuit and achieve this Settlement. They have done so with the expectation that, if they obtained a recovery for the Class from F&M, their expenses would be reimbursed and they would receive fees from the funds recovered. Class Counsel will apply to the Court for (i) attorneys' fees in the amount of no more than thirty-five percent of the total class fund and (ii) reimbursement of incurred expenses, not exceeding $150,000.

In addition, in class actions, the Court may provide specific Class Members a "Service Award" in recognition of the time, effort, and risks taken in the litigation of the case on behalf of the Class. In this Lawsuit, Class Counsel will apply to the Court for the following Service Awards to be paid based upon the extent of time, effort and risk taken by each individual to assist Class Counsel in obtaining the Settlement for the Class: $35,000 for Class Representative Harvey Kalan; $35,000 for Dr. and Mrs. Martin Zenni; and $35,000 for Dr. Pamela Erdman.

**Should I get my own lawyer?**

You do not need to hire your own lawyer because Class Counsel is representing you if you stay in the Class. However, you are welcome to hire your own lawyer at your own expense. If you hire a lawyer to speak for you or to appear in Court, your lawyer must file a Notice of Appearance.

## THE FINAL APPROVAL HEARING

The Court will hold a Final Approval Hearing at the United States District Court for the Eastern District of Pennsylvania, 601 Market Street, Philadelphia, PA 19106, in Courtroom 3-B, on **July 31, 2018**, at 10:00 a.m., to decide whether to grant final approval of the proposed settlement. If the proposed settlement is approved, the Court will also hold a hearing on Class Counsel's application for payment of attorney fees and reimbursement of costs. It is not necessary for you to appear at the hearings. The hearings may be postponed without further notice to the Class.

## GETTING MORE INFORMATION

This Notice contains a summary of relevant court papers. Complete copies of public pleadings, Court rulings and other filings are available for review and copying at the Clerk's office. The address is James A. Byrne U.S. Courthouse, 601 Market Street, Philadelphia, PA 19106. Information is also available from Class Counsel.

*Please do not contact the Court or Judge Beetlestone. They cannot answer any questions or discuss the Action with you.*

DATED:_____, 2018                    The Honorable Wendy Beetlestone
                                      United States District Judge,
                                      Eastern District of Pennsylvania

.